INSURANCE COMPANY *v.* BANGS.

1. Where a suit is brought, not to enforce a claim or lien upon property, but to cancel a purely personal contract, the Circuit Court cannot acquire jurisdiction of the defendant unless he appear or there be personal service of process upon him within the district. If he is an infant, the decree against him is void on its face, the record showing affirmatively the non-service of process, although a guardian *ad litem* was appointed for him in his absence.
2. The necessity for such service on the infant is not obviated by the State statute requiring his general guardian " to appear for and represent his ward in all legal suits and proceedings, unless when another person is appointed for the purpose as guardian or next friend."

ERROR to the Circuit Court of the United States for the District of Minnesota.

This was an action on two policies of insurance upon the life of James H. Bangs, each for $5,000, issued on the 22d of November, 1875, by the New York Life Insurance Company, and made payable to the plaintiff. It was originally commenced in a court of the State of Minnesota, and was removed to the Circuit Court of the United States on the petition of the company, averring that he was a citizen of Minnesota, and that the company was a corporation created under the laws of New York. To the complaint the company answered, and, in addition to a general denial of its allegations, set up that the insured had committed suicide by voluntarily taking poison with the intention of producing death; and when the policies were applied for and obtained, he was represented to the company to be in sound health, correct in habits, to have every prospect of a long life, and to be a person who fully intended to live as long as possible in the course of nature; that the company relied upon these representations, and believed them to be true, and would not otherwise have accepted the risks and issued the policies, or either of them; but that, nevertheless, the representations were false and fraudulent, and, at the time they were made and the policies applied for and obtained, the insured intended to take his life within a short period, and thereby to defraud the company out of the amount of insurance, and that in execution of this fraudulent purpose he took his life. The action was commenced in June, 1876, and in

July following the order for its removal was made; but the proceedings were not, in fact, transferred until the subsequent December, when the answer was filed. Nothing further was done in the case until June, 1877, when the company obtained leave to file a supplemental answer setting up a decree which, during that month, it had recovered against the plaintiff in the Circuit Court of the United States for the District of Michigan. It appears that in March, 1876, the company had commenced a suit in equity, in that court, against the plaintiff here and his mother, to obtain a cancellation of the policies of insurance and an injunction against instituting or prosecuting any action at law upon them. The bill averred — what is substantially stated in the answer above, but with much greater detail — that the insured obtained the policies with the intention, at the time, of taking his life soon afterwards, and thereby defrauding the company out of the amount of the insurance, and that he carried out this intention by taking poison, which caused his death. The supplemental answer, after setting forth the institution of the suit, averred that subpœnas were issued and served upon the defendants; that Edson C. Bangs, the son of the insured, to whom the policies were payable, being a minor, one Henry A. Harmon was appointed by the court guardian *ad litem* for him; that by this guardian he filed an answer denying that the death of the insured was caused by poison, or that the policies were obtained for the purpose of defrauding the company, or that death was effected in pursuance of any such fraudulent design, and all allegations of fraud in the bill; that afterwards proofs were taken and a decree was rendered therein adjudging the policies to be void and ordering their cancellation, and perpetually enjoining the defendants from instituting and carrying on any action at law upon them.

An exemplified copy of the record was annexed to and made part of the supplemental answer. To this answer the plaintiff demurred, on the ground, among other things, that the proceedings of the Circuit Court of the United States were void, in that it appeared from the record that the court never had jurisdiction of the person of Edson C. Bangs, the plaintiff here, and no jurisdiction in equity over the action under the circumstances mentioned. The demurrer was sustained, and subse-

quently the defendant obtained leave to withdraw the original answer, so as to rest its defence upon the supplemental answer and the matters therein pleaded.   Judgment was accordingly rendered for the plaintiff for the amount claimed, and to review that judgment the case is brought to this court on writ of error.

The record of the equity suit in Michigan showed on its face that the subpœna issued in it was never personally served upon the defendant, Edson C. Bangs, the plaintiff in this action; that it was only served on his general guardian after he, Bangs, had left the State and gone to Minnesota to reside; that upon the affidavit of the complainant's solicitor, stating that the subpœna and injunction in the case had been a week in the hands of the marshal, who reported that he could not find the defend ants in his district, that they had locked up the house where they resided and had temporarily left the State, and that he was unable to find any one in charge of the house, the court made an order declaring that the service of the subpœna and injunction on the general guardian was a good service upon the infant; that afterwards the general guardian was appointed guardian *ad litem* for him, but not making any appearance for him, and not intending to submit the rights of the infant to the adjudication of the court, his appointment was revoked, and Henry A. Harmon was substituted as such guardian *ad litem* in his place, and that he subsequently acted in the case in that capacity for the infant.

*Mr. Herbert L. Baker* and *Mr. William A. Maury* for the plaintiff in error.

*Mr. Mark S. Brewer, contra.*

MR. JUSTICE FIELD, after stating the case, delivered the opinion of the court.

As seen from the statement of the case, the only matter for our consideration relates to the validity of the decree of the Circuit Court of the United States for the District of Michigan, and that depends upon the solution of the question whether the court had jurisdiction of the person of the infant, Edson C. Bangs, the plaintiff here, and of the subject-matter of the suit upon which it acted.

From the view we take of the case, it will only be necessary to examine the proceedings to see whether the infant was ever brought before the court so as to justify the appointment of a guardian *ad litem* for him. The general authority of courts of equity over the persons and estates of infants, upon which counsel have so much dwelt, is not questioned. It may be exerted, upon proper application, for the protection of both. This jurisdiction in the English courts of chancery is supposed to have originated in the prerogative of the crown, arising from its general duty as *parens patriæ* to protect persons who have no other rightful protector. But partaking, says Story, as the prerogative does, more of the nature of a judicial administration of rights and duties *in foro conscientiæ* than of a strict executive authority, it was very naturally exercised by the Court of Chancery as a branch of its original general jurisdiction. "Accordingly," he adds, "the doctrine now commonly maintained is that the general superintendence and protective jurisdiction of the Court of Chancery over the persons and property of infants is a delegation of the rights and duty of the crown; that it belonged to that court, and was exercised by it from its first establishment; and that this general jurisdiction was not even suspended by the statute of Henry VIII., erecting the court of wards and liveries." The jurisdiction possessed by the English courts of chancery from this supposed delegation of the authority of the crown as *parens patriæ* is more frequently exercised in this country by the courts of the States than by the courts of the United States. It is the State and not the Federal government, except in the Territories and the District of Columbia, which stands, with reference to the persons and property of infants, in the situation of *parens patriæ*. Accordingly provision is made by law in all the States for the appointment of such guardians, whose duties and powers are carefully defined. The authority of the Federal courts can only be invoked within the limits of a State for such an appointment where property of the infant is involved in legal proceedings before them, and needs the care and supervision of an officer of that kind. In such a case, to preserve the property from destruction or waste, the Federal courts may appoint a guardian to take care of it pending the proceedings. And those courts

will always see that a proper guardian *ad litem* has charge of the infant's interests where his property is involved in proceedings before them. This is the extent of their authority. Nothing is gained, therefore, in this case by reference to the general power of courts of equity over the persons and property of infants. The infant Bangs possessed no property in Michigan when the suit in equity was commenced against him. That suit did not concern any property, real or personal. It was brought to cancel a contract made with his father, and any decree respecting it would necessarily have been *coram non judice*, unless the parties interested were before the court upon the service of a subpœna or their voluntary appearance. The infant, being absent from the State, could not be personally served.

The statute of Michigan requiring the general guardian of an infant to "appear for and represent his ward in all legal suits and proceedings unless when another person is appointed for the purpose as guardian or next friend" does not change the necessity of service of process upon the defendants in a case before a court of the United States where a personal contract alone is involved. It may be otherwise in the State courts; it may be that, by their practice, the service of process upon the general guardian, or his appearance without service, is deemed sufficient for their jurisdiction. We believe that in some States such is the fact; but the State law cannot determine for the Federal courts what shall be deemed sufficient service of process or sufficient appearance of parties. Substituted service, by publication, against non-resident or absent parties, allowed in some States in purely personal actions, is not permitted in the Federal courts. Such service can only be resorted to where some claim or lien upon real or personal property is sought to be enforced, and the decision of the court will then only affect property of the party within the district. Rev. Stat., sect. 738.

In all cases brought to enforce or cancel personal contracts, or to recover damages for their violation, the statute requires a personal service of process upon the defendants, or their voluntary appearance. And the equity rules qualify the statute only so far as to allow, in cases of husband and wife, a copy of th.; subpœna to be delivered to the husband, and in other cases a

copy to be left at the dwelling-house, or usual place of abode of the defendant, with some person who is a member of or resident in the family. In either mode, the defendant is to be served within the district, and until such service or his appearance, the court has no jurisdiction to proceed or to render a decree affecting his rights or interest. There being here no property of the infant defendant within the district of Michigan, which the court could lay hold of, — and he being absent from it, — there was no foundation laid for any progress by the court in the case. It never acquired jurisdiction over the infant; it could, therefore, appoint no guardian *ad litem* for him, and the decree rendered against him was ineffectual for any purpose.

Our attention has been called to several cases of the State courts, in which it has been held that a decree or judgment could not be collaterally attacked, though rendered in a case where a guardian *ad litem* had been appointed without service of process on the infant. Such are the cases of *Preston* v. *Dunn*, 25 Ala. 507 ; *Robb* v. *Lessee of Irwin*, 15 Ohio, 689 ; and *Gronfier* v. *Puymirol*, 19 Cal. 629. All of them are illustrative of the position we have stated ; they all relate to the interest of the infant in real property in the State.

In *Preston* v. *Dunn*, the bill was filed by an infant, suing by his next friend, to redeem a tract of land which had once belonged to his father, who had mortgaged it, and which had been sold under judicial decree in a foreclosure suit and purchased by the defendant. The father having died pending the foreclosure suit, and a posthumous child to him having been born, a bill of revivor was filed against the administrator and administratrix of his estate, and his infant son. A subpœna was served on the adult defendants, and a guardian *ad litem* was appointed by the court for the infant, who appeared for him. It was held by the Supreme Court of Alabama that the decree rendered upon such appearance was irregular, but not void, and that it could not be attacked collaterally.

In *Robb* v. *Lessee of Irwin*, it appeared that a guardian *ad litem* for infant heirs had been appointed in a proceeding for the sale of certain real property in which they were interested. In an action of ejectment subsequently brought by the heirs, it was held by the Supreme Court of Ohio that the proceeding

was not vitiated by the appointment of the guardian *ad litem*, without previous service of process on the infant.

In *Gronfier* v. *Puymirol*, a general guardian of the estate of non-resident infants 'had been appointed by the Probate Court upon the representation that they were interested in certain real property in the State. In proceedings for a sale of such property, the general guardian appeared for the infants without being appointed guardian *ad litem* for them, and it was held by the Supreme Court of California, that the court had jurisdiction to order the sale and that it passed a good title; and that under the practice of the State a general guardian could appear in legal proceedings for his ward when a guardian *ad litem* was not appointed by the court.

There is nothing in these cases which at all conflicts with the views we have expressed as to the jurisdiction of the Circuit Court for the District of Michigan in appointing a guardian *ad litem* for a non-resident or absent infant, in a case which did not touch any property in the district, but was brought to cancel a personal contract.

There are, also, some cases in the State courts, in which a judgment upon a personal demand has been sustained against collateral attack, though rendered in an action where a guardian *ad litem* had been appointed without previous service of process upon the infant; but they are exceptional, and there has generally been in them some circumstance which rendered any disturbance of the judgment likely to lead to great hardship and injustice. Such is the case of *Bustard* v. *Gates and Wife*, 4 Dana (Ky.), 429. There an ejectment was brought for land more than twenty years after it had been sold, and which during the interval had greatly increased in value. But in none of the cases to which our attention has been called has a judgment been upheld where a guardian *ad litem* had been appointed for a non-resident infant against whom a purely personal demand was prosecuted. If such a case exists, the judgment in it can have no greater force than one rendered for a personal demand against a non-resident upon any other form of constructive service; and that constructive service will not give jurisdiction in such cases is the established doctrine of this court. *Pennoyer* v. *Neff*, 95 U. S. 714.

*Judgment affirmed.*