Mr. Chief Justice Alvey
delivered the opinion of the Court:
Upon this somewhat involved and complicated record, three principal questions are presented: 1st. Whether, in the passage of the decree for sale of the 19th of March, 1875, the court had competent jurisdiction of the parties to that cause to bind and conclude them by decree; and if so,
2d. Whether the court had jurisdiction over the subject-matter of a nature to render its decree unimpeachable in a collateral proceeding. And if either of these questions be determined in the negative and that none of the parties defendants were bound by the decree, then,
3d. Whether there is proof sufficient in this case to show that the brother and sister of the appellee are dead, and if dead, that they died unmarried, or if married, without children or intestate?
1. With respect to the first of these questions, we think it clear that all the parties defendants to the creditor’s bill filed *270 by Wm. L. Manson were properly before the court to render them subject to its jurisdiction. There is no question as to the want of jurisdiction over any. of the parties except the two infants — the present appellee and his sister. And it is only upon the assumption that the sister is dead and that she died childless and intestate, that the appellee is in a position to raise a question as to the effect of the decree upon her interest in the property. It is true there was no service of subpoena upon either the appellee or his sister; but there was what the law recognizes as a substitute for such service, and that is the appointment of a guardian ad litem by commissioners appointed by the court, and the taking of an answer by such guardian. And in the case of a non-resident infant defendant, that would appear to be the most feasible method in practice,' both in England and in this country, of bringing the infant defendant before the court and rendering him subject to its jurisdiction. This is fully shown by Chancellor Bland in the case of Snowden v. Snowden, 1 Bl. Ch., 550, 552, 554, and the precedents cited by him. The decree sought by the creditor’s bill was not a personal decree against the infant defendants, but was a decree to affect and charge real property in which they were supposed to have an interest; and that being the case, it would seem to be fully covered and concluded by the decision in the case of Ins. Co. v. Bangs, 103 U. S., 435, 440, and cases there cited. Moreover, Poulson, the trustee, was before the court, and he represented all the interests of the beneficiaries in the trust property. Kerrison v. Stewart, 93 U. S., 155, 160. And in the absence of any charge or proof of fraud or collusion between the trustee and those adversely interested, it may even be doubted whether the children of Mrs. Manson were necessary parties. 93 U. S., 160.
However, it is insisted that, at the time of the taking of the answer of the appellee by guardian he was over twenty-one' years of age, and he should not, therefore, be bound by such answer. The appellee himself admits in his testimony that he cannot pretend to be accurate in regard to his age; *271 and his father seems to have regarded the appellee as a minor, for he so alleged the fact in his bill and he swore to it. The commissioners appointed to take the appellee’s answer, treated him as a minor, and though he was personally present before the commissioners, according to their return, and the testimony of the guardian, it does not appear that he made any question of their right or power to appoint a guardian for him, or of the right of the guardian to answer in his behalf. There would seem to be no ground whatever for the pretense that he was not present when the guardian was appointed; the evidence shows clearly to the contrary.
But however the fact as to his age, in point of truth, may be, if he was of age at the time of his answer taken, as he conteñds he was, he could have put in an answer for himself, and it was his duty to do so, 1 Dan. Ch. Prac., 116, and he cannot be heard now to impeach the jurisdiction of the court by attempting to prove that he was not a minor when his answer was taken. The court, acting upon the proof before it, concluded that the appellee was a minor, and no proof now offered, as to that fact, can affect the validity of the decree by way of collateral attack upon it. Thompson v. Tolmie, 2 Pet., 157, 163 ; Day v. Kerr, 7 Mo., 426.
2. The'most material question in this case is, whether or not the court had jurisdiction over the subject-matter of the decree for sale of a nature to render that decree free from impeachment for want of jurisdiction in the court to pass it, in a collateral proceeding.
This is not a bill of review filed in the former cause for the correction of errors occurring in the record of that cause, but it is an original, independent bill, setting up claims to property as being in reality unaffected by the proceedings and decree in the former case, under which the defendant claims, and seeking to have that former proceeding declared null and void as a mere cloud upon the appellee’s title, created by such proceeding, because taken in a court without jurisdiction of either person or subject-matter. It is, in other words, a proceeding wholly collateral, and the attempt is to *272 attack and have declared null and void the decree of sale of the 19th of March, 1875, and all the titles acquired there-' under, and that too without having the parties interested in those titles before the court.
The question is, not whether there were errors in the proceedings; there may have been very gross errors; but whether there was jurisdiction. The law has provided the ways and means for the correction of errors in judicial proceedings; but, if jurisdiction exists, the judgment or decree of a court of competent jurisdiction binds and protects all parties concerned with it until duly reversed on direct proceeding for review. Upon any other theory of judicature, the judgments and decrees of courts, instead of being the highest and the most conclusive evidence of rights, would be the sure means of deluding and ensnaring the unwary.
Now, it is certainly true, that the Supreme Court of this District has jurisdiction and power to decree the sale of the real estate of a deceased debtor, whether the title be legal or equitable, for the payment of debts; and upon the allegation that the deceased was seized either legally or equitably, and died indebted, there would be furnished a foundation for a decree of sale of such real estate for the payment of the debts. The bill of the creditor upon which the impeached decree for sale was founded, would seem to have been inartificially drawn, but we think there was enough alleged to show that the case was within the jurisdiction of the court. For notwithstanding the allegation that deceased was equitably seized of the real estate, that allegation should be construed with reference to the well established principle which holds that where a person has a general power of appointment, such as was held by Mrs. Manson, and he actually exercises his power, whether by deed or will, the property appointed will, in the contemplation of a court of equity, form part of the assets of his estate, so as to be subject to the demands of his creditors, in preference to the claims of his devisees, legatees or appointees. 2 Sug. on Pow., 27; 4 Kent. Com., 339, 340; Brandies v. Cochrane, 112 U. S., 334, 352; Clapp v. In *273 graham, 126 Mass., 200. It is true, in order to raise this equity, the power must be actually executed, for the technical reason that equity never aids or supplies the non-execution of a power. But this has been the subject of some contrariety of opinion, whether the equity did not attach as well in cases of non-execution as in cases of the actual execution of general powers. Holmes v. Coghill, 7 Ves., 499, 507. In this case the equity is very strong in favor of the creditors of the donee of the power. She purchased the estate and paid the full price therefor out of her own separate funds, and the reservation of the general power of appointment enabled her to dispose of the estate to whom she pleased— to herself or to any other person; and hence the property, the subject of such general power, has been regarded, both by legislatures and the courts of equity, as a proper fund for the payment of the debts of the donee of such power. 2 Crabb, Real Prop., 743; Wms. Real Prop., 200. If the will of the donee of the power had referred to or embraced the property, showing an intent to execute the power, and had been properly executed, or even defectively executed, so that a court of equity would have aided its execution, it would seem clear that the property would have been treated as assets for the payment of the debts of the donee; and, in such case, it would be simply a question of construction of the will of the donee. 4 Kent Com., 339, 340. All that, however, was for the court to determine when called upon to pass the decree for sale of the property to raise a fund for the payment of debts of the donee, and other incumbrances, provided for by the decree.
If the court was in error, as it would seem to have been, in passing the decree, it was the right, as it was the duty, of the defendants, if they desired to avoid the operation and effect of the decree, to have appealed therefrom, or to have the errors corrected by bill of review filed within the time allowed by law. But no such proceeding was taken, and the decree was allowed to stand; and it was not until after the lapse of more than seventeen years, and the rights of third *274 parties had intervened, that an attempt is made to annul the decree and destroy all the rights acquired thereunder. This attempt ought not to be allowed to succeed, if there be any principle that can be fairly invoked to defeat it, and to preserve the rights of parties acquired upon the faith of the decree.
It is certainly the policy of the law to maintain judicial sales, and every reasonable intendment should be indulged to uphold them. Otherwise the public would "become distrustful, and fair prices for property sold under judicial authority would seldom be obtained. Purchasers, while they are required to take notice of the existence and terms of the decrees or judgments under which they purchase, and as to the parties bound thereby, cannot be required to become judicial critics, and to pass in review, at their peril, upon the correctness of the proceedings upon which the judgments or decrees may be founded. As was pertinently said by the Supreme Court of the United States, in the case of Thompson v. Tolmie, 2 Pet., 168: “ After a lapse of years, presumptions must be made in favor of what does not appear. If the purchaser was responsible for the mistakes of the court, in point of fact, after they had adjudicated upon the facts, and acted upon them, these sales would be snares for honest men. The purchaser is not bound to look further back than the order of ‘the court. He is not bound to see whether the court was mistaken in the facts of debts and children. That the decree of an Orphans’ Court in a case within its jurisdiction is reversible only on appeal, and not collaterally in another suit.” It was further said, “that when a court has jurisdiction it has a right to decide every question that may arise in the cause; and whether its decisions be correct or not, its judgment, until reversed, is regarded as binding in every other court.” These principles apply in all respects and with special force in this case. It was for the court whose decree is attempted to be impeached, not only to decide upon the facts before it, but upon the construction and legal effect of all deeds and muniments of title upon which *275 the proceeding was based. The court having general jurisdiction over the subject-matter of decreeing the sale of real estate of a deceased debtor for the payment of debts, had the right and was required to determine the question as to the liability of the property for the debts, and whether the case was within its jurisdiction; and though its decision may have been erroneous, it could only be reversed upon a direct appeal. This question has been treated with great clearness and force by Mr. Justice Brewer, in the case of Cooke v. Bangs, 31 Fed. Rep., 640, and much of the reasoning of the opinion in that case applies with peculiar force to this. And without an extended review of the authorities, we do not deem it necessary to do more than refer to the leading, and, as we think, conclusive cases upon this subject, of Thompson v. Tolmie, 2 Pet., 157 ; Voorhees v. Bank, 10 Pet., 449 ; Grignon's Lessee v. Astor, 2 How., 319 ; Florentine v. Barton, 2 Wall., 210, 216; Hall v. Law, 102 U. S., 461, 464 ; White v. Crow, 110 U. S., 183, 188 ; Long v. Long, 62 Md., 33, 62 ; Newbold v. Schlens, 66 Md., 585, 591. Upon the reasoning and authority of these cases, we think it clear that the decree for sale of the property of the 19th of March, 1875, is not void, and therefore not subject to collateral impeachment, for want of jurisdiction of the court over the subject-matter of the suit.
The case of Shriver's Lessee v. Lynn, 2 How., 43, has been much relied on by counsel for appellee as supporting his contention. But we fail to perceive the application of the decision made in that case to the facts and conditions of the present. In that case, the trustee appointed by the decree, with authority to sell the land therein specifically mentioned and directed to be sold, proceeded to sell and report to the court for ratification, a parcel of land not embraced by the decree, and therefore never ordered to be sold; and of course the decree could not be invoked to protect the purchaser. As said by the court, the parcel of land then in controversy was not asked to be sold in the original equity cause, and it was not liable to be sold, and the decree did not *276 refer to it. It was clear, therefore, said the court, “ that this sale was not made in pursuance of the decree. Neither in the petition nor in the decree was the tract of 100 acres named or referred to. This proceeding, then, by the trustee was without authority. It could derive no sanction from the decree.” 2 How., 59.
3. With respect to the question as to the sufficiency of the proof of the death of the brother and sister of the appellee, unmarried, without issue, and intestate, after the conclusions we have reached on the two preceding questions, this third question becomes unimportant to be considered; though if it were necessary to decide it, we should be compelled to hold that the proof in this record is far from satisfactory upon the question of such supposed deaths. The proof at best is exceedingly meagre and indefinite, and not such as would afford a sáfe basis for a final decree.
■ There are other questions that would have been important in the consideration of the case, if our conclusions on the questions of jurisdiction had been different; such as the questions of laches, and the want of necessary parties. These questions, however, have become, in view of our conclusions on the main questions of jurisdiction, immaterial, and therefore unnecessary to be decided.
It follows that the decree appealed from must be reversed, and the bill of the appellee be dismissed, with costs to the appellant ; and it is so ordered.