## NEW RIVER MINERAL CO. v. SEELEY.

(Circuit Court of Appeals, Fourth Circuit. February 3, 1903.)

### No. 462.

1. JUDGMENTS—RELIEF AGAINST IN EQUITY—FRAUD OF PLAINTIFF.

A New York corporation, having its principal office in that state, owned and operated coal mines in Virginia. Its general manager there, having entire charge of its affairs in that state, shortly before leaving the service of the company, procured a judgment to be entered in his favor against it by a federal court in Virginia without its knowledge, and for this purpose employed one of the attorneys of the company, whose firm had been theretofore retained by him, to represent it, and which had no relations with the company except through him. The attorney secured an acceptance of service of process for the company by a bookkeeper, who was under the plaintiff's control, and who, in the acceptance, represented himself, without authority, to be the company's agent. The company had no notice of the suit or judgment until months after it was rendered, although both the plaintiff therein and the bookkeeper were in constant communication with its officers. *Held* that, in the absence of conclusive proof of the plaintiff's good faith, a court of equity should set aside his judgment to permit the company to defend the action on the merits.

2. FOREIGN CORPORATIONS—SERVICE OF PROCESS—VIRGINIA STATUTE.

The statute of Virginia (Code, § 1105) provides that, where a foreign corporation doing business in the state fails to comply with the requirement to designate an agent upon whom process may be served, service upon either of the officers, agents, or employés of the company shall be deemed a sufficient service on the company; but the statutes of the state nowhere provide for the acquiring of jurisdiction over a foreign corporation by an acceptance of service by any of its agents or employés. *Held* that, to acquire jurisdiction under section 1105 by service upon an agent or employé, its provisions must be strictly followed, and the service made by an officer, and that an acceptance of service by a bookkeeper employed by a foreign corporation, who represented himself, in the acceptance, as having authority to represent the company, but in fact did not, conferred no jurisdiction on a federal court in Virginia to render a judgment against the company.

3. PROCESS—SUFFICIENCY OF SERVICE—EFFECT OF RECITAL IN JUDGMENT.

Where jurisdiction to render a judgment against a defendant is claimed upon a substituted service, and the record shows that such service was not made as prescribed by the statute, a recital in the judgment that "process was duly executed on the defendant according to law" is not conclusive.

Appeal from the Circuit Court of the United States for the Western District of Virginia, at Abingdon.

See (C. C.) 117 Fed. 981.

John C. Blair and M. M. Caldwell, for appellant.

A. A. Campbell and Joseph L. Kelly, for appellee.

Before GOFF, Circuit Judge, and BRAWLEY and BOYD, District Judges.

BRAWLEY, District Judge. The appellant is a corporation organized under the laws of the state of New York, with its principal office and officers in the city of New York. It is engaged in mining

¶ 2. Service of process on foreign corporations, see note to Eldred v. American Palace Car Co., 45 C. C. A. 3.

coal in the state of Virginia, and George M. Seeley, the appellee, was its general manager in that state, having been appointed in the year 1890, and remaining in charge until May 31, 1898. In the early part of that year he had offered his resignation as general manager, but was induced to withhold the same and remained until June 1st. On March 24, 1898, Seeley commenced an action at law for balance due for services against the New River Mineral Company, retaining for that purpose Capt. F. S. Blair, who, with his son, John C. Blair, constituted the firm of Blair & Blair, the attorneys in Virginia of the New River Mineral Company. In lieu of service of process upon the company, Ira Dumont, the bookkeeper, was requested to accept service by F. S. Blair, who told him to sign it, as it was all right; the acceptance of service indorsed upon the summons being in the words following:

"As agent of the New River Mineral Company, at Ivanhoe, Wythe county, Virginia, and representing it, I accept legal service of the within summons for said company this 24th day of March, 1898.
    "[Signed]                                             Ira Dumont."

At the regular May term, 1898, in the Circuit Court of the United States, Western District of Virginia, a verdict for $12,069.37 was found, and judgment entered; the company not being represented. The acceptance of service and verdict are in the handwriting of F. S. Blair. Dumont testifies that he had no authority from the company to accept service in its behalf. The company had no notice of this suit, nor knowledge that judgment had been obtained against it, although it appears from the testimony that Pearson, the secretary of the company, was at Ivanhoe, in Virginia, on May 25, 1898, and remained there for nearly a week in conference with Seeley and Dumont, in contemplation of turning over the management from Seeley to Dumont, which was done on June 1, 1898. Letters from Dumont to Pearson, the treasurer of the company, in New York, covering the period from March 2, 1898, to May 28, 1898, are in evidence, and no mention is made therein of this suit; and in June, 1898, Seeley was in New York, and had frequent conferences with the vice president, who had full control over the affairs of the company, and no mention was made of the judgment. Some months thereafter, when the company learned that judgment had been obtained, it immediately instructed the attorneys, Blair & Blair, to commence proceedings to set it aside. F. S. Blair having died in January, 1899, his surviving partner associated with him other counsel, and a motion was made before Judge Paul to set aside the judgment, which motion was refused, apparently upon the ground that a bill in equity was the proper remedy, and such bill was duly filed. Upon the hearing thereof, a decree was entered May 28, 1902, dismissing the bill. Hence this appeal.

The undisputed facts are that Seeley, the general manager of this company, its trusted agent, and having entire charge of its affairs in the state of Virginia, shortly before severing his relations with the company, procured a judgment to be entered against it without its knowledge, and for this purpose employed one of the attorneys of the company, whose firm had been theretofore chosen by him to rep-

resent it, and which had no relations with the company except through him; that in furtherance of this object the attorney so employed secured an acceptance of service of process for the company by Dumont, its bookkeeper, who was under Seeley's control, and he accepted service, representing himself to be its agent, without any authority from the company; that the company had no knowledge of the suit, nor of the judgment until months after it was obtained, although during that period Seeley was in constant communication with it and had repeated personal interviews with its active head.

The disputed facts relate to the circumstances attending the bringing of the suit. The death of the attorney who had procured the judgment has prevented the obtaining of his testimony as to this transaction, but his son and surviving partner says in his deposition:

"Several years prior to the year 1898 our firm represented the New River Mineral Company, having been retained by George M. Seeley, manager. We represented the company at the time the judgment was recovered. We were not acquainted with any of the officials of the company, except Seeley, who employed us and gave us directions as to the conduct of any legal matters that he wished attended to, the institution of and defense of suits. My recollection of the transaction now in controversy is that Seeley came to our office and stated to my father that the New River Mineral Company was indebted to him on account of salary; that they did not want to pay the money, but desired that he take a judgment for the amount due him, no execution to issue at that time; that Mr. Dumont would accept service of process, and requested that we prepare a declaration and obtain the judgment accordingly; that we were employed by Seeley for the company, and received our authority solely from him. My recollection is that my father prepared the declaration and obtained the judgment, as requested by Seeley. I took no part in the transaction, and only remember the circumstance of his having been in our office and made the request as above set forth. I heard no more of the matter until several months afterwards. when we received a letter which I herewith file, instructing us to take steps to set aside the judgment, which we immediately did, as will be seen from the papers on file in this court, in the name of said company against Seeley. In January, 1899, my father died, and I associated in the case with me Messrs. Walker & Caldwell. Mr. Ira Dumont had in the meanwhile been appointed general manager of the company, and I asked his co-operation in setting aside the judgment. He agreed with me that the circumstances of the suit and recovery of the judgment are as above stated."

Seeley denies that he told Mr. Blair that he had a letter from the company instructing him to secure judgment and for Dumont to accept service, and claims that he showed his attorney the letters of the treasurer and the statement of his account, which disclosed that the company was indebted to him in the amount claimed, and that he simply wished to get a judgment to secure this amount. In explanation of his silence respecting this suit and judgment, he says that he was informed by his attorney that the judgment would not be a binding judgment until it was recorded in Wythe county, and that he did not have it recorded there until after they had refused to pay him, and that he supposed that the company was amply warned of his intention to secure himself by his conversation with them, and by the service of the writ upon Dumont, who had been appointed manager to succeed him, and by the fact that he went to F. S. Blair, the chief counsel of the company. Dumont, who had been dismissed from the service of the company at the time when

his testimony was given, says that he was requested by Seeley to "go with him to Wytheville, so he could settle up all the affairs of the company prior to his leaving"; that he went with Seeley to the office of Blair & Blair, and was requested by F. S. Blair to sign a paper accepting notice of service, etc.; when he was reading it over F. S. Blair told him to sign it, as it was all right; he did not remember whether it was Seeley or Blair who told him that the suit was brought by Seeley for services rendered; that no one but F. S. Blair, Seeley, and himself were present at the time when this interview took place. The testimony of J. C. Blair evidently refers to a conversation between his father and Seeley at some time prior to the day when Seeley and Dumont went to the office of the firm for the purpose of carrying out the plans referred to in that conversation.

The conclusion of the learned judge below as to this phase of the case is as follows:

"On the proposition that Seeley deceived the company's attorney, the most that can be contended is that the evidence stands equally balanced."

A judgment ought to be, as Lord Coke defined it, "the very voyce of law and right," and we have now to determine whether this judgment for a considerable sum of money, obtained by a trusted agent of this foreign corporation, admittedly without its knowledge, through the instrumentality of other trusted agents, who were to a considerable extent under the direction and control of the plaintiff, who concealed from the defendant any knowledge of his suit, is so far conformable to law and justice that it should be upheld. Mr. Justice Field, in Windsor v. McVeigh, 93 U. S. 277, 23 L. Ed. 914, quotes some remarks of Mr. Justice Swayne in another case, as follows:

"The order in effect denied the respondent a hearing. It is alleged he was in the position of an alien enemy, and could have no locus standi in that forum. If assailed there, he could defend there. The liability and right are inseparable. A different result would be a blot upon our jurisprudence and civilization. We cannot hesitate or doubt on the subject. It would be contrary to the first principles of the social compact and of the right administration of justice."

And he then adds:

"The principle stated in this terse language lies at the foundation of all well-ordered systems of jurisprudence. Wherever one is assailed in his person or his property, there he may defend; for the liability and the right are inseparable. This is a principle of natural justice, recognized as such by the common intelligence and conscience of all nations. A sentence of a court, pronounced against a party without hearing him or giving him an opportunity to be heard, is not a judicial determination of his rights, and is not entitled to respect in any other tribunal."

No laches can be imputed to the defendant here in delaying the proceeding for the vacating of the judgment. As soon as it was informed of it, it directed its attorneys to institute proceedings for vacating it, and a motion to that end was promptly made, and upon the refusal of the motion a bill in equity was filed, which is the appropriate proceeding, taking the place of the old writ of audita querela, which was invented, says Blackstone, "lest in any case there should be an oppressive defect of justice, where a party who hath a good defence is too late to make it in the ordinary forms of law." Any irregular

or improper conduct in procuring a judgment to be entered is a well-settled ground for vacating it. Accordingly, says Freeman on Judgments (section 100):

"It is laid down by the most eminent elementary writers, and fully sustained by the adjudged cases, that, when a case has not been heard on the merits, the court will, good cause being shown, exercise a discretionary power of vacating an enrollment and giving the party an opportunity of having his case discussed. The fact that the merits of the case were never before the court seems to be the controlling one in all applications for the exercise of this discretionary power. Therefore, where a decree is perfectly regular, so far as regards the appearance of the parties, and is in conformity with the general practice, it may be vacated at the discretion of the court upon a showing of mistake, accident, or surprise, or of negligence of the solicitor, by which the decision on the merits was prevented."

In many of the states it is provided by statute that courts, at their discretion and on such terms as may be just, may at any time within one year after notice thereof relieve the party from a judgment taken against him through his mistake, inadvertence, surprise, or excusable neglect. The maxim that "fraud vitiates everything" is applicable to judgments, and is always available to the injured party on the ground that it had occasioned the rendition of a judgment against him by surprise or mistake, or any circumstance which as to him might well be deemed excusable neglect.

We are of opinion that in the circumstances of this case, in view of the peculiar relations · of confidence and trust which the plaintiff sustained toward this absent corporation, it is not sufficient that testimony tending to show that the plaintiff deceived the company's attorney should stand "equally balanced." This attorney owed his retainer as the company's attorney to the plaintiff. The bookkeeper who accepted service of process was under the plaintiff's control. The plaintiff was the general manager of the absent corporation. His relation to it was such that the doctrine of uberrima fides obtained, and in any transaction wherein his interest was antagonistic to the interest of his company he should be required to show that he was duly regardful of the interest of his principal, not by "equally balanced" testimony, but by conclusive testimony. The surviving partner of Blair & Blair testifies, and this is not disputed, that his firm had been retained to transact such business as the company required in Virginia, by Seeley; that it had no relations with the company, except through him. It is also undisputed that Dumont, the bookkeeper, was under Seeley's control. It is not denied that, although in constant communication with the company by correspondence, he did not disclose to it the fact that he was bringing suit against it, and that he did not mention it to the officer of the company who was in Virginia during that period, and that he did not have the judgment recorded in the county where its property was situate until some time after it was entered. If there was a studied design to take an unfair advantage of his position as the trusted agent of the company to obtain a judgment against it surreptitiously, it is difficult to see what could have been done or omitted by him which would have more effectually accomplished that purpose than that which he actually did and omitted to do.

Apart from this consideration, which seems to us to furnish sufficient ground to set aside the judgment, we doubt that it can be legally sustained. The learned judge below has upheld it on the ground that Dumont, being an agent of the corporation on whom process against it might be legally served, was competent to accept service for the corporation; citing from Thompson on Corporations (section 7526): "Any one upon whom service of process may be executed is competent to acknowledge in writing in behalf of the corporation that he has been served,"—and 19 Encyclopædia of Pleading and Practice, p. 670, to the same effect.

Section 1104 of the Code of Virginia provides as follows:

"Every company incorporated under the laws of this state or another state, and doing business in this state, except an insurance company incorporated under the laws of another state, shall have an office in the state at which all claims due residents of the state against such company may be audited, settled and paid. Every such company incorporated under the laws of another state, shall, by written power of attorney, appoint some person, residing in the state, its agent upon whom all lawful process against the company may be served, and who shall be authorized to enter an appearance in its behalf."

The remainder of the section provides for the recording of the power of attorney in the office of the clerk of the court of the county wherein such office is located, and the evidence is that no such power of attorney was filed by this company.

Section 1105 provides:

"The officers, agents and employees of any such company, doing business in this state, without complying with the provisions of the preceding section, shall be personally liable to any resident of the state having a claim against such company, and, moreover, service of process upon either of such officers, agents or employees shall be deemed a sufficient service on the company."

Chapter 158 relates to the service of process.

Section 3220 provides that process from any court, whether original, mesne, or final, may be directed to the sheriff or sergeant of any county; that it shall be returnable within 90 days after its date to the court on the first day of the term, or in the clerk's office to the first or third Monday in the month, or the first day of any rules.

Section 3222 provides:

"Every officer who attends a court, shall, within five days after the end of any rules, go to the clerk's office and receive all process, orders and decrees to be executed by him, and give receipts therefor. For any failure so to do, he shall forfeit fifty dollars."

Section 3223 provides:

"The process to commence a suit shall be a writ commanding the officer to whom it is directed to summon the defendant to answer the bill or action. It shall be issued on the order of the plaintiff, his attorney or agent, and shall not, after it is issued, be altered nor any blank therein filled up, except by the clerk."

Section 3224[1] provides:

"Any summons or scire facias shall be served as a notice is served under section 3207, except, that such process (unless it be a summons for a witness)

---

[1] This section was amended by Acts 1891–92, p. 1083, c. 701, and the requirement of service by an officer was stricken out. The attention of the court was called to the amendment in a petition for rehearing, but after consideration the petition for rehearing was refused.

shall in all cases be served by an officer, and except also, that when such process is against a corporation, the mode of service shall be as prescribed by the following section."

Section 3225 provides:

"Process against or notice to a corporation may be served as follows: * * * If against a corporation created by some other state or country, or in any case, if there be not in the county or corporation wherein the case is commenced, any other person on whom there can be service as aforesaid, on any agent of the corporation against which the case is (unless it be a case against a bank), or on any person declared by the laws of this state to be an agent of such corporation."

Section 3226 relates to service on corporations operated by trustees or lessees.

Section 3227 provides:

"Service on any person under either of the two preceding sections shall be by delivering to him a copy of the process or notice in the county or corporation wherein he resides, or his place of business is or the principal office of the corporation is located, and the return shall show this, and state on whom and when the service was; otherwise it shall not be valid."

Section 3207, which was referred to in section 3224, provides:

"A notice, no particular mode of serving which is prescribed, may be served by delivering a copy thereof in writing to the party in person; or, if he be not found at his usual place of abode, by delivering such copy and giving information of the purport to his wife or any person found there, who is a member of his family, and above the age of sixteen years; or if neither he nor his wife, nor any such person be there, by leaving such copy posted at the front door of said place of abode."

These are substantially all of the provisions of the Code of Virginia relating to the service of process, and an examination of the rules of the Circuit Court for the Western District of Virginia does not disclose anything relating to the subject. In those states which have adopted a Code of Civil Procedure there are other provisions which differ from those in force in the state of Virginia. As an example of the latter class, the Code of South Carolina provides (section 159) that:

"Proof of service of the summons and of the complaint or notice may be: (1) If served by the sheriff, by a certificate thereof; (2) if by any other person, by his affidavit thereof; (3) in case of publication, by the affidavit of the printer, etc.; (4) by the written admission of the defendant."

It will be observed that section 3224 of the Code of Virginia provides that "process shall in all cases be served by an officer," and section 3227 provides for the delivery to the agent of a copy of the process, and that the "return shall show this and state on whom and when the service was; otherwise it shall not be valid." It might fairly be inferred, then, that it was the policy of the state of Virginia, when by section 1105 it was provided that "service of process upon an absent corporation might be made upon any agent or employee," thus greatly enlarging the number and class of persons who might be served as representing the company, to throw such safeguards around service of this nature as would forbid collusion, and by requiring service to be made by a public officer under the responsibilities of his office, and where there would be public record of the same, it might enable parties interested, by examination of such public records, to know whether or not suits were pending against it; otherwise, it might be possible for any employé of a company, however

humble and unrepresentative might be the nature of his employment, by an acceptance of service to bind the company which employed him. The cases are numerous where the courts of the United States have considered the question whether the agents of a foreign corporation were so far representative as would bind the corporation; but we have not found any case wherein a statute as broad as that now under consideration has been reviewed.

In St. Clair v. Cox, 106 U. S. 359, 1 Sup. Ct. 362, 27 L. Ed. 222, Mr. Justice Field says:

"A transaction of business by the corporation in the state, general or special, appearing, and the certificate of service of process by the proper officer on the person who is agent there, would, in our opinion, be sufficient prima facie evidence that the agent represented the company in the business. It would then be open, when the record is offered as evidence in any state, to show that the agent stood in no representative character to the company, that his duties were limited to those of a subordinate employé or to a particular transaction, or that his agency had ceased when the matter in suit arose."

And in Mutual Life Insurance Company v. Spratley, 172 U. S. 602, 617, 19 Sup. Ct. 308, 314, 43 L. Ed. 569, Mr. Justice Peckham says:

"Continuing to do business, the company impliedly assented to the terms of that statute, at least to the extent of consenting to the service of process upon an agent so far representative in character that the law would imply authority on his part to receive such service within the state."

And, while the court held that such service upon that particular agent was sufficient, there is an intimation that the court might not hold that service upon any agent mentioned in the act of 1887 therein referred to would be good.

In the cases dealing with this subject the service of process upon an agent of a foreign corporation is frequently referred to as constructive or substituted service, and the general rule is that, where service is made under a statute, the statute must be strictly complied with to obtain jurisdiction. It is thus stated in Thompson on Corporations (section 7503):

"Where a particular method of service of process upon corporations is pointed out by statute, that method must be followed. * * * Statutes of this kind are not regarded as directory, but as mandatory and exclusive. Hence, when the statute prescribes the method of service, a method not included therein will not be good, although it might have been good at common law."

Thus, in cases where a minor is a party, the fact of minority does not dispense with the necessity of obtaining jurisdiction over his person by the service of process upon him. The general rule stated by Freeman on Judgments (section 151) is that:

"Neither a minor nor his guardian can waive such service unless authorized to do so by some statute. * * * Service of process upon a minor must precede the appointment of a guardian ad litem for him, and though such guardian was appointed, and appears and represents the interest of an infant defendant, his appointment and all subsequent proceedings, including the final judgment, are void, as against an infant not served with process."

In Insurance Company v. Bangs, 103 U. S. 435, 26 L. Ed. 580, the process was not served personally upon the infant, but was served upon his general guardian. The case arose in Michigan, where the statute required the general guardian of an infant to appear for and

represent his ward in all legal suits and proceedings. The court held
that this statute—

"Does not change the necessity of service of process upon the defendants
in a case before a court of the United States, where a personal contract alone
is involved. It may be otherwise in the state courts. It may be that by their
practice service of process upon a general guardian, or his appearance without
service, is deemed sufficient for their jurisdiction. We believe that in some
states such is the fact, but the state court cannot determine for the federal
courts what shall be deemed sufficient service of process or sufficient appear-
ance of parties. * * * In all cases brought to enforce or cancel personal
contracts, or to recover damages for their violation, the statute requires a
personal service of process upon the defendants or their voluntary appear-
ance."

And the decree rendered against the infant in that case was held
ineffectual for any purpose, because the jurisdiction was not acquired
over the infant, and the court had no authority to appoint a guardian
ad litem for it.

In Staunton Perpetual B. & L. Co. v. Haden, 92 Va. 201, 23 S. E.
285, Keith, P., says:

"Being a service regulated by statute, the law should have been strictly
pursued, and this not having been done, but having been wholly disregarded,
we are of opinion that the summons and the return thereon were ineffectual
to bring the defendant, the West Clifton Forge Investment Company, before
the hustings court of the city of Staunton; that that court acquired no juris-
diction over it; and that the judgment rendered by that court was, as to this
defendant, null and void."

The decisions of the Supreme Court of Appeals of Virginia clearly
establish the proposition that, where constructive service of process
is allowed in lieu of personal service, the terms of the statute by which
it is authorized must be strictly followed, or the service will be invalid,
and the judgment rendered thereon by default be void.

It is contended here that the recital in the judgment, which is in
these words: "This day came the plaintiff, and it appearing that the
process was duly executed on the defendant according to law"—is
conclusive, or that it at least raises the presumption that the court
heard evidence as to Dumont's authority to accept service, and found
that he was so authorized. Such a contention was not sustained in
the case of Settlemier v. Sullivan, 97 U. S. 444, 24 L. Ed. 1110. In
that case the statute required that "in actions in personam service
could be made by the sheriff's delivering to the defendant personally,
or if he could not be found, some white person of his family above the
age of fourteen years, at his dwelling house or usual place of abode, a
copy of the complaint and notice to answer." The sheriff's return
showed that the service was made by delivering to the wife of the
defendant, a white woman over 14 years of age, at the usual place of
abode, a copy of the complaint and notice, but it contained no state-
ment that the defendant could not be found; and at the ensuing term
a judgment was rendered against him, with a recital that the "defend-
ant, although served with process, came not, but made default." It
was held that the court by such service acquired no jurisdiction and
its judgment was void. The court says:

"The substituted service in actions purely in personam was a departure
from the rule of common law, and the authority for it, if it were allowed at
all, must have been strictly followed."

As the statute of Virginia contains no provisions for acquiring jurisdiction over foreign corporations by an acceptance of service by any of its agents or employés, is such authority to accept service to be presumed? We think not; and the fact that Dumont was an agent or employé upon whom service might legally have been made does not, in the absence of a statutory provision authorizing him to accept service, raise any presumption of his authority to bind the company. He has testified that he had no such authority, although in his acceptance of service he describes himself as "agent of the company and representing it." Thompson on Corporations (section 7527) thus states the law: .

"By analogy to the principle that an agency is not proved by the mere declaration of a person that he is agent of another, so the authority of a person assuming to accept service for a corporation is not shown by the relation in which he describes himself in his written indorsement of acceptance; but his authority must otherwise appear."

Dumont having testified that he had no authority from the company to accept service for it, we are of opinion that he was not an agent who was so far representative of the company that it would be fair, reasonable and just to imply an authority on his part to bind the company by an acceptance of service; and as the statute of Virginia gave him no such authority, and service upon this corporation was not effected in the manner provided by such statute, it would follow that the court had no jurisdiction. No principle is better settled than that a court of equity will interfere in all cases where advantage has been gained by the improper conduct of a party through judicial proceedings, where the party seeking relief is without fault, whether those proceedings were regular or not; otherwise, those tribunals would be instruments of injustice.

The decree of the court below is reversed, and the case remanded to the Circuit Court, with instructions to vacate the judgment.

Reversed.