## WELLS, FARGO & Co. *v.* MINER and others.

*(Circuit Court, D. California.* November 9, 1885.)

1. EQUITY PRACTICE—CIRCUIT COURT—STATE STATUTES.
   State statutes regulating procedure are not applicable to equity courts of United States, but when they enlarge equitable rights by creating new remedies, such remedies may be enforced in those courts.

2. SAME—INTERPLEADING ADVERSE CLAIMANTS—CODE CIVIL PROC. CAL. § 386.
   The right to interplead adverse claimants, created by Code Civil Proc. Cal. § 386, may be enforced in the circuit court.

3. SAME—INTERPLEADER—WHEN ALLOWED.
   To justify an interpleader, the same thing, debt, or duty must be claimed by both claimants; all adverse titles or claims must be dependent on, or derived from, a common source, complainant seeking relief must not have or claim any interest in the subject-matter; and he must have incurred no independent liability to either of the claimants; that is, he must stand perfectly indifferent between them, in the position purely as stakeholder.

In Equity.

*Pillsbury & Blanding,* for complainants.

*Langhorne & Miller,* for defendants.

SAWYER, J. This is an application for a preliminary injunction, in a suit on the equity side of the court, brought by the banking-house of Wells, Fargo & Co. against Richard S. Miner, Frank Silva, and the Southern Development Company of Nevada, to compel them to interplead with one another respecting a certain certificate of deposit, for $7,500, which was issued by complainant to defendant Silva. From the papers used on the hearing, it appears that Silva sold a mining claim to the Southern Development Company for an agreed price of $10,000, and received in payment a check for that amount on the Bank of California. Silva deposited the check with the banking house of Wells, Fargo & Co., who thereupon paid him $2,500 in coin, and issued to him a certificate of deposit for $7,500, "payable to Frank Silva, or order, on return of this certificate properly indorsed." By mesne assignments, before maturity, the certificate came into the possession of the defendant Miner, who now claims to be the owner and holder thereof; but he is alleged by the Southern Development Company not to be a holder in good faith. The Southern Development Company claims that in the sale of the mine Silva made certain false and fraudulent representations as to its character and value, upon which it relied, and by reason thereof it is entitled to rescind the sale, and recover back everything of value which it paid to Silva. Accordingly, before any presentation of said certificate for payment, the Southern Development Company notified Wells, Fargo & Co. that the check on the Bank of California had been obtained by Silva by means of fraud, misrepresentation, and deceit, and that it claimed the certificate in question, and warned them not to pay it to Silva. The Southern Development Company then caused Silva to be arrested and prosecuted on the criminal charge of obtaining money

under false pretenses; but the jury disagreed on the trial, and thereupon the district attorney dismissed the information, and the prisoner was discharged. The Southern Development Company then brought a civil action against Silva, which is now pending in this court, to recover $15,000 damages, alleged to have been suffered by reason of the fraudulent misrepresentations aforesaid, of which suit it notified complainant. It also brought suit against Wells, Fargo & Co., in which neither Silva nor Miner was made a party, to enjoin the payment of the certificate until the determination of the aforesaid action against Silva for $15,000 damages. In this suit, Wells, Fargo & Co. suffered a default, and judgment was rendered against them according to the prayer of the complaint. At this point, Miner presented the certificate to Wells, Fargo & Co. for payment, which was refused on the ground that they had been enjoined, and thereupon Miner instituted an action at law on the certificate against Wells, Fargo & Co., in this court. They appeared in that action, and made a motion, under section 386 of the Code of Civil Procedure of California, that the Southern Development Company be substituted in their place and stead as defendant. This motion was argued elaborately, and denied by the district judge of Nevada, holding the circuit court, on the ground that an equitable cause of suit could not be thus injected into an action at law in the United States courts. Thereupon, Wells, Fargo & Co. instituted the present suit in equity, to compel the defendants to interplead, and they now move for a preliminary injunction, restraining the prosecution of the actions against them respecting the certificate until the determination of the rights of the parties upon an interpleader. They offer to pay the money into court for the benefit of the party who shall be adjudged entitled to it.

The defendant Silva disclaims all interest in the subject-matter. The Southern Development Company makes no opposition to the motion, and Miner opposes it on the ground that it is not a proper case for an interpleader.

The question as to whether this is a proper case for an interpleader has been very elaborately argued. There are about 400 pages of printed arguments, and a very extensive collection and careful analysis of the authorities, showing the different circumstances under which interpleaders have been denied, and wherein they have been allowed, in courts of equity. This is a motion for an injunction to restrain the prosecution of those suits until the determination of the rights of the parties on the bill for interpleader. The defendants do not deny that the complainants are entitled to the injunction, provided the case is a proper one for a bill of interpleader. They say it is not within the class of cases in which courts of equity, under the chancery practice as it heretofore existed, and under the law of England, have interfered. Conceding defendants to be right on this proposition, it is still, in my judgment, within one of the provisions of the Code of Civil Procedure of the state of California, provided that

provision is applicable. Section 386, among other things, provides as follows:

"And whenever conflicting claims are or may be made upon a person for, or relating to personal property, or the performance of an obligation, or any portion thereof, such person may bring an action against the conflicting claimants to compel them to interplead, and litigate their several claims among themselves. The order of substitution may be made, and the action of interpleader may be maintained, and the applicant, or plaintiff, be discharged from liability to all or any of the conflicting claimants, *although their titles or claims have not a common origin, or are not identical, but are adverse to and independent of one another.*"

The contention here is that these claims have not a common origin, are not identical, that there is an independent claim, and therefore that they are not within the original chancery jurisdiction. If this clause be applicable, and can be acted upon in this court, it abolishes the distinction resting upon these elements. It is insisted, on the part of the defendant here, that the statute cited is not applicable to the United States courts of equity, as the Code of Procedure does not apply on the equity side of the courts. If it were merely a provision regulating procedure, undoubtedly it would be so; but I think it is more than that. It gives a right to a party in equity. It enlarges his equitable rights; it enlarges the scope of his remedy. It is not a question of enlarging the jurisdiction of the court; it gives a new remedy,—a new right in the form of a remedy. I think it is within the rule, as established by the supreme court of the United States in the *Broderick Will Case,* which was an appeal from this court. In that case, there was a bill filed to set aside and vacate the will and the probate of the will of Broderick. This court dismissed the bill. The case went to the United States supreme court on appeal; and, in deciding the case, the supreme court says:

"It is undoubtedly the general rule, established *both in England and this country,* that a court of equity will not entertain jurisdiction of a bill to set aside a will, or the probate thereof."

Then, in commenting on the statute of California of 1862, which, in the district court of the state, gave the new remedy, the court says:

"The statute of 1862 has been referred to, which gives the district courts of California power to set aside a will obtained by fraud or undue influence, or a forged will, and any probate obtained by fraud, concealment, or perjury. While it is true that alterations of jurisdiction of the state courts cannot affect the equitable jurisdiction of the courts of the United States, so long as the equitable rights themselves remain, *yet an enlargement of equitable rights may be administered by the circuit courts as well as by the state courts. And this is probably a case in which an enlargement of equitable rights is effected, although presented in the form of remedial proceedings.*" *Broderick's Will,* 21 Wall. 519, 520.

In that case, then, the court suggests that new equitable rights granted by statute of the state may be enforced in the circuit courts of the United States, but affirms the decree of the court below, on the statute of limitations. In Ohio, an act was passed authorizing

the restraining of the collection of taxes, which was a remedy that did not before exist, under the circumstances provided for, in courts of equity. A case went to the supreme court of the United States from Ohio, arising under that statute, and the court says in regard to it:

"Though we have repeatedly decided in this court that the statute of a state cannot control the *mode of procedure in equity cases in the federal courts,* nor deprive them of their separate equity jurisdiction, we have also held that where a statute of a state *conferred a new right, or provided a new remedy, the federal courts will enforce that right,* either on the common law *or equity side* of its docket, as the nature of the new right or the new remedy requires. *Van Norden* v. *Morton,* 99 U. S. 378;" *Cummings* v. *National Bank,* 101 U. S. 157.

In the case of *Curtis* v. *Sutter,* 15 Cal. 262, the statute provided, under the old practice act of California, then section 254, that a party in possession of land might bring a suit against a party out of possession, setting up an adverse title, to determine that adverse claim. It was held in *Curtis* v. *Sutter* that this provision gave a new remedy; that it enlarged the scope of the remedy, and to that extent gave a new right in equity. That right did not exist before. Under the statutes of Nevada there is a similar provision. A suit was brought there to determine the adverse claim in the case of *Central Pac. R. Co.* v. *Dyer,* 1 Sawy. 649. The question arose whether the United States circuit court could administer that remedy, it being a new remedy. Mr. Justice FIELD, in commenting on the statute, said:

"The statute, it is true, enlarges the classes of cases in which the jurisdiction was formerly exercised in quieting the title and possession of real property. It dispenses with the necessity of the previous establishment of the right of plaintiff by repeated judgments in his favor in actions at law. To that extent, it confers upon the possessor of real property a *new right,*—one which enables him, without the delay of previous proceedings at law, to draw to himself all outstanding inferior claims. That *right the national courts will enforce in the same manner in which they will enforce other equitable rights of parties.*" Citing *Clark* v. *Smith,* 13 Pet. 203.

Those rights have been enforced repeatedly in the supreme court of the United States, and the doctrine is now recognized in numerous cases, as in *Holland* v. *Challen,* 110 U. S. 16; S. C. 3 Sup. Ct. Rep. 495; and *Reynolds* v. *Crawfordsville Bank,* 112 U. S. 405; S. C. 5 Sup. Ct. Rep. 213. In the last case the right was extended by state statute still further. It was extended to the party out of possession, as does the present statute of California. And the remedy was also extended to the cancellation of a deed void on its face, for which there was before no remedy in equity. The supreme court held that the party out of possession could maintain that suit in equity to cancel a deed void on its face in the United States court. *Chapman* v. *Brewer,* 114 U. S. 170, 171; S. C. 5 Sup. Ct. Rep. 799; *Cummings* v. *The National Bank,* 101 U. S. 157; *Van Norden* v. *Morton,* 99 U. S. 378,—cases to which I have already called attention,—and *Ellis* v. *Davis,* 109 U. S. 485, S. C. 3 Sup. Rep. 327, establish this doctrine.

The right here is precisely analogous to those. The statute gives a new right, and if this case does not come within the rule before established by courts of chancery in regard to the points made, I think, under the statute, the remedy is so enlarged as to cover the case; and, as it now stands, the right can be enforced in a court of equity of the United States. The statute gives a new right,—an enlargement of the scope of the remedy; and, it being a case peculiarly of equitable cognizance, it can be enforced on the equity side of the court. Prof. Pomeroy regards the remedy as being enlarged by the statute, and, under the authorities, that it will be enforced by courts of equity. He comments upon the statute in the notes to section 1324, 3 Pom. Eq.

I am by no means certain that the case is not one for interpleader under the chancery practice as it originally existed before the enlargement of the scope of the remedy by statutory provisions. These are the elements laid down by Prof. Pomeroy, in his Equity Jurisprudence, required to justify an interpleader:

"(1) The same thing, debt, or duty must be claimed by both." Both the Southern Development Company and Miner claim to be entitled to the certificate of deposit in question, and to receive the money that is due upon it.

"(2) All adverse titles or claims must be dependent, or derived from a common source." These claims all come from the same source,—the original transaction between the development company and Silva; the rights of all depend upon the acts of Silva, and upon the acts of complainant dependent upon the acts of Silva. The development company claims that Silva obtained from it the ten thousand dollar check on the Bank of California by fraud, misrepresentation, and deceit, and therefore that the transaction is void, and that the party giving the check is entitled to it. Had Silva never parted with the check, and the contest been between him and the drawer, can there be a doubt that the claims would have come from a common source? If not, can passing the check to another, with notice, change the character of the act in this respect? Silva simply changed the check into a certificate of deposit amounting to $7,500, substituting one for the other, thereby not only committing a fraud on the development company, if it be a fraud, but also on Wells, Fargo & Co. in obtaining the certificate of deposit. Miner is simply a claimant under Silva, and the latter only substituted one party, who is claimed not to be an innocent assignee, in the transaction for another, and one commercial instrument for another. They all, therefore, claim from the same source, and all the claims arise out of and are dependent upon the same act.

"(3) Complainant seeking relief must not have or claim any interest in the subject-matter." The complainants in this case claim no interest against either. They are ready to pay the money into court for the benefit of the party entitled to it. They stand neutral between the two parties.

"(4) He must have incurred no independent liability to either of the claimants; that is, he must stand perfectly indifferent between them in the position purely as stakeholder." I do not see how claimants stand in any other than a dependent position. Because they have issued a certificate of deposit it is claimed that they have entered into an independent contract. How independent? As the case now stands, they are liable only on the certificate. There is but one liability, and that is on the certificate. No party is entitled to recover against them, without returning that certificate properly indorsed. Should they pay the money to Miner, and it turn out that he is not entitled to receive it, they might be liable to complainant. But the liability would rest upon different grounds. Those grounds do not now exist, and there is at this time but one cause of action, and that is on the certificate. The only question then is, who is the owner of that certificate? The contest is as to this specific thing, this piece of commercial paper. There is no liability independent of that certificate. They are now liable on that, and on nothing else. How can this be an independent liability in the sense of the rule? It is true, Wells, Fargo & Co. became debtors, but only on the certificate. As before said, no recovery can be had against them, except upon this certificate of deposit. The title to the certificate of deposit is in issue here between these parties, and it is the only issue. The development company claim that they own it by reason of the fact that it was obtained from them by fraud; and Miner claims that he owns it, either because there was no fraud, or, if there was, because he is a *bona fide* holder for value without notice of the fraud. Complainants are not liable to both. It is a mere question as to who owns that certificate of deposit. That is the question at issue, and it is a matter of entire indifference to complainants which owns it. They are mere stakeholders. That question the claimants ought to litigate between themselves. The adverse claimants are the only ones to blame for the dilemma in which complainants are placed, and they ought to assume the burden of relieving complainants from the dilemma.

The defendants are liable on that certificate either to the development company or to Miner. They are not liable to both. They do not know which. That is the very thing to be ascertained. The doctrine relied on to deny an interpleader is that announced in *Crawshay* v. *Thornton*, 2 Mylne & C. 1, an English case, decided before the present system of practice in England went into effect. It is very doubtful in my mind whether that doctrine would be sustained at this time even in England. The observations of a number of English judges made subsequently to the decision of that case, and to the change of the law by statute, indicate that they repudiate the doctrine there announced, and regard the grounds on which the distinction is rested as being very narrow. The act of 1860, in England, like the provisions of the California Code of Procedure which I have just read,

has abolished the distinction taken in that case. The provision is similar to our statute. 1 presume our statute was adopted from the English act of 1860. I should be very much disposed to hold the case to be a proper one for interpleader, even if it stood on the ordinary principles of equity jurisprudence alone, without the aid of this act enlarging the equitable rights of parties in such cases. At all events, I am satisfied that by this act a new right was created, broad enough to reach the case, which can be enforced in this court.

I am satisfied, therefore, that it is a proper case for a bill of interpleader, and that the injunction should be granted. The motion is granted, on giving security in the sum of $10,000.