## OUSLER v. UNITED STATES.

### (Circuit Court of Appeals, Sixth Circuit. March 21, 1920.)

#### No. 3324.

INTOXICATING LIQUORS $\Longleftrightarrow$239(4)—IN PROSECUTION FOR INTERSTATE TRANSPORTATION, INSTRUCTIONS AS TO KNOWLEDGE SHOULD BE GIVEN.

On trial of a defendant for aiding in interstate transportation of liquor in violation of Reed Amendment, § 5 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8739a), by carrying the liquor in an automobile from a railroad station, where it had been unloaded, to another point in the same state, refusal to charge that defendant could not be convicted unless he had knowledge of the interstate character of the shipment, and that it was still in course of transportation and had not reached its intended destination, *held* error.

In Error to the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Criminal prosecution by the United States against Cyril Ousler. Judgment of conviction, and defendant brings error. Reversed.

Ralph Davis, of Memphis, Tenn., for plaintiff in error.
Thos. J. Walsh, Asst. U. S. Atty., of Memphis, Tenn.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. Eads is a railroad station a few miles north of Memphis, in Tennessee. Thirty suit cases containing intoxicating liquors were sent from Paducah Ky., in a baggage car, checked in the usual way, 6 to Eads and 24 to Memphis. Before reaching Eads, the holders of the checks for the 24 appeared in the baggage car, surrendered their checks, and directed that these, also, be put off at Eads. All 30 cases were, accordingly set off on the station platform. Two automobiles were there standing. Some of the suit cases had been loaded into each machine, when officers undertook to arrest those engaged in the transaction. The farther machine started up and escaped. On their way back to Memphis, with those who had been arrested and with the liquor which had been seized, the officers observed a machine which had been headed the same way, but was overturned in the ditch. There were broken bottles about, and other evidence that this machine had been carrying liquor, but no suit cases were there found. There was reason to believe that Ousler had been driving this wrecked machine, and he was indicted for violation of the Reed Amendment (39 Stat. 1069 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8739a]), the charge being that he "did unlawfully, willfully, and knowingly order, purchase, and cause certain intoxicating liquors * * * to be transported in interstate commerce; that is to say, from Paducah, in the state of Kentucky, to Memphis, in the state of Tennessee, by means of the Nashville, Chattanooga & St. Louis Railroad." He was convicted and brings this writ of error.

We are satisfied that there is evidence from which the jury could rightfully infer that Ousler knowingly participated in executing a plan

$\Longleftrightarrow$For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to carry liquor from Kentucky to Memphis, and might therefore have been guilty of participating in its interstate transportation into Tennessee; and we do not find in the allegations of error sufficient basis to justify discussion, with one exception. Ousler's counsel was contending, so far as questions of law were concerned, that, at most, Ousler did not participate in anything but an attempt to carry the liquor from Eads to Memphis, that this was not interstate transportation, and that he must be acquitted. In different forms, this was urged upon the court, so that it became entirely clear that the vital question was whether his participation was confined to this step, or whether it extended to the through transportation which had, from the beginning, contemplated Memphis as the ultimate destination. It is plain that, if this liquor had been shipped to Eads, and the plan of sending it on to Memphis had been a later plan of the shipper, or if the purchaser, accepting final delivery from the railroad at Eads, formed a separate and independent plan to take it on to Memphis, the interstate transportation would have ended at Eads, and Ousler would not be guilty. Therefore, before the jury could convict, it must find that this liquor had been destined for Memphis, instead of Eads, before it left Kentucky, and that Ousler knew this, or was chargeable with knowledge. Beyond the question of fact whether Ousler was the driver of this car, the interstate character of the shipment, continuing after the setting off at Eads and Ousler's knowledge of this character, formed the substance of the issue. In this situation, the judge charged the jury,

"If you believe the car ditched was the car that ran away from Eads, and if it had whisky in it out of this shipment, and that Cyril [Ousler] was driving it when it turned over bringing it into Memphis—if you believe that beyond a reasonable doubt—then I charge you he would be guilty of violating this act. * * * I charge you that if you believe he was down there driving that car that night, and there was whisky in the car that made its getaway over at Eads, and Cyril [Ousler] was driving it and transporting the whisky on the balance of its journey to Memphis, it would be your duty to return a verdict of guilty. * * *

"A Juror: There is no proof in the record to show that he ordered the whisky. Suppose we come to the conclusion that some one else ordered it, and sent him down there for it; how should we act?

"The Court: I said to you a moment ago that if you conclude from all the evidence that the car that turned over down there was loaded with whisky taken out of this shipment, and that Cyril [Ousler] was driving it, thereby completing the transportation from Paducah into Memphis, in hauling it from Eads here, then you should convict him."

Thereupon respondent's counsel excepted to the statement of the court in response to the question to the juror, and asked the court to charge that if defendant did not cause the liquor to be transported into the state of Tennessee as an article of interstate commerce, but only sought to bring it from Eads to Memphis, he would not be guilty. The court declined to charge as thus requested, and substantially repeated the charge already made. Without doubt, the court overlooked the thought that respondent ought not to be convicted unless he had knowledge of the fact that the shipment was interstate and had not ended at Eads, and the charge as given was erroneous. The only hesitation we have in reversing arises from a doubt whether the error or deficiency

of the charge in this respect was sufficiently brought to the attention of the trial judge by the exceptions taken and the colloquy before him, only a part of which we have quoted. We conclude that the error cannot be, for this reason, overlooked. Defendant's counsel did not, in so many words, ask an instruction that this knowledge by defendant was essential, but this was the substance of his position. He was insisting that transportation from Eads to Memphis was not interstate, and in this he was prima facie right. His request could rightly be refused only upon the theory that Ousler was intelligently taking part in a Kentucky-Memphis transportation, and we think the duty rested on the court to make this clear to the jury without any more express request, while, from the entire charge, the jury would naturally have inferred its duty to convict, on finding the mere fact that Ousler was driving this car, and without considering anything further.

We would be infringing upon the province of the jury, if we said that Ousler's guilt was so clear as to make the error nonprejudicial. It is not for the court to say that the jury could not base a reasonable doubt upon the theory that, even if Ousler did drive this car, he was doing so as any other taxicab driver might, without understanding or caring about his passengers' business, and that the flight from Eads was the impulsive or terrified effort to get away from strange men, who, with drawn revolvers, were ordering his hands up, rather than an intelligent effort to participate in interstate commerce.

The judgment must be reversed, and the case remanded for new trial.