## KLABER et al. v. MARYLAND CASUALTY CO.

### No. 9734.

Circuit Court of Appeals, Eighth Circuit.
March 5, 1934.

Emmet S. Brumbaugh, of Omaha, Neb. (Joseph P. Gray and Leo Fried, both of Omaha, Neb., on the brief), for appellants.

John L. Barton, of Omaha, Neb. (Raymond M. Crossman, Alfred C. Munger, Herbert E. Story, John C. Thomas, and Varro H. Rhodes, all of Omaha, Neb., on the brief), for appellee.

Before STONE, SANBORN, and VAN VALKENBURGH, Circuit Judges.

SANBORN, Circuit Judge.

The appellee, Maryland Casualty Company, on July 18, 1931, issued its policy of automobile liability insurance to Fay Watson, Ray Watson, and Thomas Watson, copartners doing a trucking business in Nebraska, Kansas, and elsewhere, under the name of Watson Bros. Transfer Company. The insurance was "against loss from liability imposed by law upon the assured for damages on account of bodily injuries including death resulting therefrom, accidentally suffered or alleged to have been suffered by any person or persons caused by or through the ownership, maintenance or operation of any automobile * * *," etc. The limit of liability for one person so killed or injured was $5,000, and for all persons so injured or killed in a single accident, $10,-000. Under the policy the casualty company was obligated to investigate all accidents and claims covered, and to defend in the name and on behalf of the assured all suits thereon, and to pay, regardless of the limit of liability, the expense (including court costs and interest on judgments after entry)

incurred by it in such investigation and defense; the company reserving the right to settle any claims or suits. It was also provided that the insolvency or bankruptcy of the assured should not release the company from the payment of damages for injuries or death sustained or loss occasioned within the coverage of the policy, and that the prepayment of any judgment recovered against the assured upon a claim covered by the policy should not be a condition precedent to any right of action against the company, "but the Company is bound to the extent of its liability under this policy to pay and satisfy such judgment; and an action may be maintained upon such judgment by the injured person, or his or her heirs or personal representatives, as the case may be, to enforce the liability of the Company as in this policy set forth and limited."

The liability of the company was made subject to the condition that no action should lie against it to recover upon any claim or for any loss "unless brought after the amount of such claim or loss shall have been fixed and rendered certain either by final judgment against the assured after trial of the issue or by agreement between the parties with the written consent of the Company. * * *"

Under an indorsement required by the state of Kansas, the company agreed "to pay any final judgment for personal injury, including death resulting therefrom * * * caused by any and all motor vehicles operated by the assured * * * within the limits set forth * * *," and further agreed "that upon its failure to pay any such final judgment, such judgment creditor may maintain an action in any court of competent jurisdiction to compel such payment. Nothing contained in the policy or any indorsement thereon nor the violation of any of the provisions thereof by the assured, shall relieve the company from liability hereunder or from the payment of any such judgment."

It therefore appears that what the company, by the terms of its policy, agreed to do was: (1) To investigate all claims made against the assured falling within the coverage of the policy, and to defend all suits brought upon such claims. (2) To pay, within the limits and subject to the conditions of the policy, any claim against the assured covered by the policy, when the amount of the claim had been fixed (a) by a final judgment against the assured, or (b) by agreement between the claimant and the

assured, with the written consent of the company.

On December 22, 1931, a truck belonging to the assured, being driven by one of its employees upon a public highway, collided with a bus owned and operated by the Interstate Transit Lines. The accident occurred near Hiawatha, Kan. The driver of the truck, the driver of the bus, and one bus passenger were killed and a number of bus passengers were injured. Another truck not belonging to the assured in some way became involved in the accident, and the driver of that truck and a passenger were or claim to have been injured. As a result of the accident and the deaths and injuries caused thereby, numerous claims were made and numerous suits brought against the assured, the investigation and defense of which were assumed by the company. The total demands for damages were very large and far in excess of $10,000. Finally, in a suit instituted by the appellant Klaber, who was the guardian of one of the bus passengers, against the assured, a final judgment of $4,000 was procured in the District Court of Douglas county, Neb. Execution upon this judgment was returned unsatisfied and a summons in garnishment was served upon the casualty company. Before the date fixed for disclosure, the company filed in the United States District Court for the District of Nebraska, its bill of interpleader under the Interpleader Act of 1926, title 28, § 41 (26), U. S. C. Appendix, page 2025, chapter 273, §§ 1–3, 44 Stat. 416 (28 USCA § 41 (26), naming as defendants the assured, the Interstate Transit Lines, the persons who had made or were making or might make claims against the assured for injuries or death, the plaintiffs in the various suits against the assured in which no final judgments had as yet been obtained, the appellant Klaber, who was the only judgment creditor of the assured at the time the bill was filed, and the other appellants, who were Klaber's counsel. The bill set up the policy, the happening of the accident, the resulting claims and suits against the assured in various jurisdictions brought by persons residing in various states, the recovery of the judgment against the assured by the appellant Klaber, the garnishment proceedings, the danger of the company's being harassed and held for a greater liability than that provided for in its contract, because of the various claims and suits in the several jurisdictions against its assured, and the payment into court by the company of the limit of its liability. The company asked that the defendants be required to interplead with respect to the fund deposited, and be enjoined from prosecuting their actions elsewhere.

The court entered the usual restraining order, the effect of which was to prevent all of the defendants from proceeding against the company or its assured in other courts or in other proceedings. The appellant Klaber and other defendants moved to dismiss the bill for want of equity. The company asked for a temporary injunction. The court denied the motions to dismiss the bill and enjoined the appellant Klaber and his counsel from continuing with his garnishment proceedings, and all other defendants from proceeding against the company, but permitted them to prosecute their claims and suits against the assured. From the order and decree denying the motions of appellants to dismiss the bill and granting the injunction, this appeal is taken.

Interpleader is an ancient equitable remedy which recognizes the right of a disinterested stakeholder, from whom several persons claim the same thing, debt, or duty, to have the conflicting claimants litigate the matter among themselves without embroiling him in their controversies. 15 R. C. L. 221; Pomeroy's Equity Jurisprudence (4th Ed.) vol. 4, § 1320; Story's Equity Jurisprudence (14th Ed.) vol. 2, § 1116; Standley v. Roberts, 59 F. 836, 841 (C. C. A. 8). The stakeholder applies to the court to protect him not only from having to pay or deliver the thing claimed to the several claimants, but also from the vexation of suits which are or may be instituted against him by them. The true origin of the jurisdiction is that there is no remedy at law or that the legal remedy is inadequate. The ground upon which the plaintiff comes into equity is that, claiming no right in the subject-matter himself, he is or may be vexed by having two or more suits brought by different persons going on against him at the same time, and therefore that justice requires that those persons, claiming that to which he makes no claim and with reference to which he has no interest except to rid himself of it, should settle their controversy among themselves and not with him or at his expense and hazard. Story's Equity Jurisprudence (14th Ed.) vol. 2, § 1118.

The essential elements of the equitable remedy of interpleader are: (1) The same thing, debt, or duty must be claimed by both or all the parties against whom the relief is demanded. (2) All their adverse titles or claims must be dependent, or be derived

from a common source. (3) The plaintiff must not have nor claim any interest in the subject-matter. (4) He must have incurred no independent liability to either of the claimants and must stand perfectly indifferent between them, in the position merely of a stakeholder. Pomeroy's Equity Jurisprudence (4th Ed.) vol. 4, § 1322; Wells, Fargo & Co. v. Miner (C. C.) 25 F. 533. See, also, Calloway v. Miles (C. C. A. 6) 30 F.(2d) 14; Connecticut General Life Ins. Co. v. Yaw (D. C.) 53 F.(2d) 684.

A bill of interpleader cannot be maintained by any person who does not show two or more claimants in existence capable of interpleading. Story's Equity Jurisprudence (14th Ed.) vol. 2, § 1136; Alton & Peters v. Merritt, 145 Minn. 426, 177 N. W. 770; Maxwell v. Frazier, 52 Or. 183, 96 P. 548, 18 L. R. A. (N. S.) 102, 104. And the bill must show that each of the defendants claims a right, and such a right as they may interplead for. Story's Equity Jurisprudence (14th Ed.) vol. 2, § 1136; Pusey & Jones Co. v. Miller (C. C.) 61 F. 401, 403; Kahn v. Garvan (D. C.) 263 F. 909, 915. If the plaintiff denies his liability to any of the defendants, he is not entitled to the remedy; he destroys the very foundation upon which it rests. Pomeroy's Equity Jurisprudence (4th Ed.) vol. 4, § 1325, and note.

The bill must show that all of the requisites entitling the plaintiff to the remedy exist in the case. Pomeroy's Equity Jurisprudence (4th Ed.) vol. 4, § 1328.

An averment that the plaintiff is disinterested is necessary.

In Killian v. Ebbinghaus, 110 U. S. 568, 571, 4 S. Ct. 232, 233, 28 L. Ed. 246, the court said:

"The bill is either a bill of interpleader or a bill in the nature of a bill of interpleader. It is clear that it cannot be sustained as a bill of interpleader. In such a bill it is necessary to aver that the complainant has no interest in the subject-matter of the suit; he must admit title in the claimants and aver that he is indifferent between them, and he cannot seek relief in the premises against either of them."

And in Groves v. Sentell, 153 U. S. 465, 485, 14 S. Ct. 898, 905, 38 L. Ed. 785, the court said:

"The general rule is that a party who has an interest in the subject-matter of the suit cannot file a 'bill of interpleader,' strictly so called. In fact, the assertion of perfect disinterestedness is an essential ingredient of such a bill."

The federal courts always have had jurisdiction to entertain bills of interpleader where the amount in controversy was sufficient and the other essentials of jurisdiction were present. "Interpleader in the United States Courts," Chafee, Yale Law Journal, vol. 41, p. 1134, cont'd in vol. 42, page 41. There were, however, two reasons why their jurisdiction frequently proved ineffective. First, under the general provisions of law a United States District Court cannot issue process beyond the limits of the District, and a defendant in a civil suit can be subjected to its jurisdiction in personam only by service within the District. Toland v. Sprague, 12 Pet. 300, 330, 9 L. Ed. 1093; Herndon v. Ridgway, 17 How. 424, 15 L. Ed. 100; New York Life Insurance Co. v. Bangs, 103 U. S. 435, 26 L. Ed. 580; Munter v. Weil Corset Co., 261 U. S. 276, 279, 43 S. Ct. 347, 67 L. Ed. 652; Robertson v. Railroad Labor Board, 268 U. S. 619, 623, 45 S. Ct. 621, 69 L. Ed. 1119. Second, the District Courts are without authority to stay proceedings in a state court unless expressly authorized by Congress. There are exceptions to this rule which are not here involved. The statute forbidding such injunctions is now title 28, § 379, U. S. C. (28 USCA § 379). See Lowther v. New York Life Ins. Co. (C. C. A. 3) 278 F. 405; Essanay Film Mfg. Co. v. Kane, 258 U. S. 358, 42 S. Ct. 318, 66 L. Ed. 658.

Most insurance companies did an interstate business, and it frequently happened that conflicting claims arose with respect to the proceeds of their policies. Where the claimants lived in a single jurisdiction, the remedy by interpleader was effective because the company could file its bill, pay its money into court, and be discharged from further liability, and the contest could be carried on between the conflicting claimants. But where the claimants resided in different jurisdictions, they could not be compelled to interplead, no fair trial of the issues between them could be had, and the company was often sued upon the same policy in two or more states or districts, and thus subjected to vexatious and expensive litigation and sometimes to double liability. In attempting to remedy this objectionable situation, the first Federal Interpleader Act was passed in 1917, chapter 113, 39 Stat. 929. It did not change the remedy, but enlarged the jurisdiction. It provided that the United States District Courts should have jurisdic-

tion of equity suits of interpleader where an insurance company was the complainant and where it was made to appear by the bill that two or more bona fide claimants to the insurance or benefits of the policy reside within the jurisdiction of the court, that the policy provides for the payment of at least $500, that two or more adverse claimants, citizens of different states, are claiming or may claim the insurance or benefits, and that the company has deposited the amount due with the clerk of the court. In such cases the court was authorized to issue its process to bring in nonresident claimants, but no authority was expressly granted to enjoin pending suits. This act improved the situation, but did not completely cure it because it was held that the act did not by implication repeal the statutory prohibition against the stay of proceedings in a state court. Lowther v. New York Life Ins. Co. (C. C. A. 3) supra, 278 F. 405. Furthermore, the provisions of the act relating to the district in which the suit was to be commenced were in some respects obscure. ("The Federal Interpleader Act," Conwell, "Association of Life Insurance Counsel Proceedings," 1913–1921, XLIII.) The second Interpleader Act was passed in 1925, chapter 317, §§ 1–3, 43 Stat. 976. It was virtually the same as the present act, but omitted any express authorization for the granting of injunctions to stay suits in the state courts. Because of that omission, the Act of May 8, 1926, c. 273, §§ 1–3, 44 Stat. 416, title 28, § 41 (26), U. S. C. Appendix, page 2025 (28 USCA § 41 (26), was passed, repealing the two former acts.

The 1917 Act and the 1925 Act were limited to bills filed by insurance companies or associations or fraternal or beneficial societies. The 1926 Act was expressly made applicable to bills filed by casualty companies and surety companies, as well. The jurisdiction granted extended to bills in which it was averred: (a) "That one or more persons who are bona fide claimants against such company * * * reside within the territorial jurisdiction of said court"; (b) that the insurer "has in its custody or possession money or property of the value of $500 or more, or has issued a bond or a policy of insurance or certificate of membership providing for the payment of $500 or more to the obligee or obligees in such bond or as insurance, indemnity, or benefits to a beneficiary, beneficiaries, or the heirs, next of kin, legal representatives, or assignee of the person insured or member"; (c) "that two or more adverse claimants, citizens of

different States, are claiming to be entitled to such money or property or the penalty of such bond, or to such insurance, indemnity, or benefits"; (d) that the insurer "has deposited such money or property or has paid the amount of such bond or policy into the registry of the court, there to abide the judgment of the court."

Express authority was granted to the court by the 1926 Act for the issuance of process to bring in all claimants and for the issuance of an injunction against each of them, "enjoining them from instituting or prosecuting any suit or proceeding in any State court or in any other Federal court on account of such money or property or on such bond or on such policy or certificate of membership until the further order of the court," notwithstanding statutory provisions to the contrary.

The substantial differences between the 1917 Act and the 1926 Act are these: (1) The former did not specifically refer to casualty and surety companies; the latter does. (2) The former required that it be "made to appear by such bill * * * that two or more adverse claimants, citizens of different States, are claiming or may claim to be entitled to such insurance or benefits." The latter requires that such bill aver "that two or more adverse claimants, citizens of different States, are claiming to be entitled to such money or property or the penalty of such bond, or to such insurance, indemnity, or benefits." (3) The former contained no authority for enjoining proceedings in other courts; the latter has such a provision. (4) Under the former it was in some instances difficult to determine where the bill should be filed; the latter clarifies that situation.

An interesting comparison of the two acts is to be found in a paper read before the Association of Life Insurance Counsel on December 8, 1926, by Mr. Joseph S. Conwell, counsel for the Penn Mutual Life Insurance Company. See, "Association of Life Insurance Counsel Proceedings," vol. III, p. 469. In speaking of the difference between the 1917 Act and the 1926 Act with respect to the averment as to claimants, he says:

"Considerable difficulty was experienced by the Committee with what is termed the 'may claim' clause. Some of the members of the Senate sub-committee were not willing to permit the companies to obtain the jurisdiction of the District Court where there was only a possibility that two or more persons 'may claim' the proceeds of the policy, and

hence it was necessary, in order to secure the passage of the Act of 1926, that the words 'may claim' be stricken from the Act. Under the later Act, therefore two or more adverse claimants, citizens of different states, must actually claim to be entitled to the proceeds of the policy."

Professor Chafee, in his article, "Interpleader in the United States Courts," vol. 41, Yale Law Journal, p. 1134, in a footnote on p. 1163, says:

"This change was made in order to secure the passage of the Act of 1926. Some of the members of the Senate sub-committee were not willing to permit the companies to obtain the jurisdiction of the District Court when there was only a possibility of claims by two or more persons."

It is clear that, in order to invoke the enlarged powers granted to the United States District Courts by Congress with respect to certain bills of interpleader, the insurer must present a bill which not only contains the averments required by the statute, but which is sufficient under the principles of equity. The act does not deprive the federal courts of any jurisdiction which they previously had over bills of interpleader, nor does it change the equitable principles governing such bills. Mutual Life Ins. Co. of N. Y. v. Bondurant (C. C. A. 6) 27 F.(2d) 464; National Fire Ins. Co. v. Sanders (C. C. A. 5) 38 F.(2d) 212, 214; Calloway v. Miles (C. C. A. 6) supra, 30 F.(2d) 14. It merely provides that in certain cases and for the benefit of a class of disinterested stakeholders the courts may exercise powers that could not otherwise be exercised.

No insurer should be denied the benefits which were intended to be conferred by the act, but, on the other hand, since the courts have no legislative powers, they have no right to extend the unusual authority granted by the act to cases which do not fairly fall within its provisions, liberally construed. There is no doubt that the courts, in the interests of justice, have shown a tendency to relax the technical rules relating to the essential elements of a bill of interpleader so far as possible; but that those rules still exist cannot be controverted.

If the bill before us showed that the defendants other than Klaber were bona fide adverse claimants against the company within the meaning of the Interpleader Act, and that the company was a disinterested stakeholder, we would be inclined to hold that it might maintain this suit under the act. The

hazard which the company seeks to avoid was not caused by it. The rights of the defendants arise from a common source, namely, the accident. There is a real danger of the company's being subjected to more than one suit by those who seek judgments against its assured, if they are successful. It started this suit immediately after Klaber commenced his proceeding to recover from it by garnishment the amount of his judgment against the assured, and cannot justly be charged with laches. Whatever legal remedies it has are, perhaps, as likely to prove inadequate as those of any insurance stakeholder against whom claims are made in excess of its liability. See National Fire Ins. Co. v. Sanders (C. C. A. 5) supra, 38 F.(2d) 212.

We are convinced, however, that, under the allegations of the bill, Klaber was the only defendant who was an actual claimant, and that the other defendants are persons who may become claimants depending upon whether they succeed in procuring judgments against the assured or whether they do not.

We are also convinced that the company is not a disinterested stakeholder. It does not aver that it is. The facts pleaded show that it is not. It admits no rights in the defendants other than Klaber to the fund, and no liability of either itself or its assured to them. It occupies a position of active hostility to all defendants except Klaber, and must, if it can, prevent their ever obtaining any claims against the fund. See Stusser v. Mutual Union Ins. Co., 127 Wash. 449, 221 P. 331, 333; Pope v. Missouri Pac. Ry. Co. (Mo. Sup.) 175 S. W. 955, 957. Moreover, if it succeeds in defeating their claims against its assured, there will be about $6,000 left in the registry of the court after payment of the Klaber judgment, to which the company alone will have a claim.

Our conclusion is that the bill is not one which comes within the Interpleader Act, and that the court therefore was clearly without authority to enjoin Klaber from proceeding with his garnishment, and could not compel those defendants who were citizens of states other than Nebraska to interplead.

It does not necessarily follow, however, that because the bill was not within the statute and that the decree was therefore erroneous in the particulars mentioned, the appellants were entitled to a dismissal of the suit. The jurisdictional amount is involved and there is diversity of citizenship. Therefore, if the bill, although not one of statu-

tory interpleader, may be sustained as a bill in the nature of a bill of interpleader, it should not be dismissed. A stakeholder who is not indifferent may maintain such a bill. McNamara v. Provident Sav. Life Assur. Soc. of N. Y. (C. C. A. 5) 114 F. 910; Knickerbocker Trust Co. v. City of Kalamazoo (C. C.) 182 F. 865; Hayward & Clark v. McDonald (C. C. A. 5) 192 F. 890; Sherman Nat. Bank of N. Y. v. Shubert Theatrical Co. (C. C. A. 2) 247 F. 256; Groves v. Sentell, 153 U. S. 465, 485, 486, 14 S. Ct. 898, 38 L. Ed. 785; Fleming v. Phoenix Assur. Co. (C. C. A. 5) 40 F.(2d) 38; 15 R. C. L. 233.

■ The general rule, however, is that the only material difference between a true bill of interpleader and a bill in the nature of a bill of interpleader is that in the latter the plaintiff may show that he has an interest in the subject of the controversy between the defendants. 15 R. C. L. 233, 234; Stephenson v. Burdett, 56 W. Va. 109, 48 S. E. 846, 10 L. R. A. (N. S.) 748; Story's Equity Jurisprudence (14th Ed.) vol. 2, § 1140; 33 C. J. 424.

■ We think that, at the time the company filed its bill, it was not in a position to require the other defendants to interplead with Klaber. They were not demanding anything of it, and whether they would ever be in a position to demand anything of it was purely conjectural. The indemnity provided by the policy was then adequate to meet any existing liability of or claim against the company, and no showing was or could then be made that there were or would be claims aggregating more than $10,000 against it. The company's denial of liability for its assured and its defense of all suits and claims leaves it in a poor position to treat those seeking judgments against its assured as claimants against it for the purpose of interpleader. The effect of the decree appealed from is to prevent the only real claimant under the policy from collecting what is due him until it can be ascertained whether other claimants will come into existence. The other defendants could not interplead because they had no claims to interplead with. They could neither claim nor disclaim. The most they could do would be to inform the court whether, if they succeeded in obtaining judgments against the assured, they intended to assert any claims against the company under the terms of its policy, or whether they did not.

We reach the conclusion that the bill was not sufficient either as a bill of interpleader or one in the nature of a bill of interpleader.

■ The company has asked permission to show that, since this appeal was docketed a judgment for $10,000 has been obtained by the defendant Erwin against its assured. It is obvious that what has transpired since the appeal cannot be considered in aid of the bill or the decree. If the facts stated in the bill were not sufficient to give the court jurisdiction, the appellants were entitled to a dismissal.

The decree is reversed and the case remanded with directions to dismiss the bill.