**UNDERWRITERS AT LLOYD'S and Certain British Insurance Companies, Plaintiffs,**

v.

**R. H. NICHOLS et al., Defendants.**

**No. PB–66–C–6.**

United States District Court
E. D. Arkansas,
Pine Bluff Division.

Feb. 10, 1966.

R. A. Eilbott, Jr., Pine Bluff, Ark., for plaintiffs.

William Arnold, Hamburg, Ark., O. C. Burnside, Lake Village, Ark., John F. Gibson, Dermott, Ark., Willis Townsend, Little Rock, Ark., for defendants.

HENLEY, Chief Judge.

This is a suit in the nature of interpleader brought by British liability insurance companies, affiliated with Lloyd's of London, against individual citizens of Arkansas. There is complete diversity of citizenship between the parties, and the amount in controversy is substantially in excess of $10,000, exclusive of interest and costs. Certain defendants have moved to dismiss the complaint on the ground that the Court has no power to grant the relief sought by plaintiffs; that motion has been submitted on memorandum briefs.[1]

The case arises out of 1965 aerial crop dusting operations of the individual defendant, Roy Sheffield, in Southeast

---

1. The question raised by the motion was raised first by the Court in the course of a hearing on plaintiffs' aplication for a preliminary injunction restraining the prosecution and initiation of suits against plaintiffs' insured in the State court of

Arkansas. Two suits against the insured have been filed already, and one of them is now set for trial on February 28 of the current year. Hence, prompt disposition of the motion is desirable.

Arkansas. During the relevant period Sheffield held policies of liability insurance issued by plaintiffs providing indemnity against liability resulting from damages produced by Sheffield's spraying. Plaintiffs assert, and moving defendants deny, that plaintiffs' total limits of liability under the policies do not exceed $20,000.

During the 1965 crop year Sheffield sprayed certain rice crops with an herbicide which was dangerous to growing broad leafed plants, including cotton. Some of the herbicide fell or drifted upon crops of cotton growing in the vicinity of the rice fields which were being sprayed and the growing cotton was allegedly damaged as a result of contact with the chemical. About 18 claims of cotton farmers for damages have been or will be made against Sheffield; the total claims are expected to amount to more than $50,000. As noted, two suits have been filed against Sheffield, and the aggregate of the amounts demanded in those suits is in excess of $25,000.

It is the position of the plaintiffs that in such circumstances they are entitled by virtue of the provisions of Rule 22 of the Federal Rules of Civil Procedure, 28 U.S.C.A.,[2] to pay into the registry of this Court the alleged policy limit of $20,000, to bring into court the insured, the rice farmers for whom he was spraying, and the cotton farmers allegedly claiming damage on account of the insured's activities, to compel the litigation in this single action of all claims against Sheffield, and to enjoin the further prosecution of the two pending State court suits and the initiation of other suits in the State courts. Plaintiffs deny that Sheffield is liable to any of the cotton farmers and state that should the cotton farmers

be unsuccessful in the prosecution of their claims against him plaintiffs will be entitled to a return of their money. Alternatively, plaintiffs say that if the cotton farmers are successful and if judgments rendered against Sheffield exceed the alleged policy limit, the amount of the deposit should be prorated among the successful claimants.

It is to be observed that there is no diversity of citizenship between Sheffield and the respective cotton farmers, and it appears that some of the individual claims against Sheffield are for less than $10,000. Hence, apart from this action, none of the cotton farmers' claims against Sheffield would be within the jurisdiction of this Court.

Under Arkansas law a person injured in his person or property on account of the negligence or tortious misconduct of another has no right of direct action against the tort feasor's liability insurance company unless and until he obtains a judgment against the tort feasor with the judgment remaining unsatisfied. Then and only then can the injured party sue the liability insurance carrier. Ark. Stats., 1947, Cum.Supp., §§ 66–4001 and 4002.

The position of the movants is that since the claims of the cotton farmers against Sheffield have not been reduced to judgment, those farmers have no claims as of this time against plaintiffs, and that this action cannot be maintained.

The theory of the plaintiffs is that they are exposed to the expense and vexation of defending numerous lawsuits against the insured; that judgments in excess of policy limits may be rendered by several State courts; that if judgments up to policy limits are paid as they

2. *"Rule 22. Interpleader*

"(1) Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not

identical but are adverse to and independent of one another, or that the plaintiff avers that he is not liable in whole or in part to any or all of the claimants. * * *

"(2) The remedy herein provided is in addition to and in no way supersedes or limits the remedy provided by Title 28, U.S.C., §§ 1335, 1397 and 2361. Actions under those provisions shall be conducted in accordance with these rules."

are rendered, the fund may be exhausted to the prejudice of some of the claimants; and that if the fund is so exhausted, plaintiffs may at least be sued for sums in excess of policy limits on the theory that plaintiffs should have prorated the fund among all claimants. And plaintiffs urge that in such circumstances the granting of relief under Rule 22 is not precluded by the fact that the claims of the cotton farmers are still unliquidated tort claims.

As far as authority is concerned, plaintiffs rely on the wording of Rule 22(1) read in connection with the wording and history of the Federal Interpleader Act referred to in Rule 22(2), and upon Pan American Fire & Casualty Co. v. Revere, E.D.La., 188 F.Supp. 474, which was cited and followed in Commercial Union Insurance Co. of N. Y. v. Adams, S.D., Ind., 231 F.Supp. 860.

The liberalization of federal interpleader jurisdiction and practice effected by the promulgation of Rule 22, effective in 1938, and by the rewriting of the Federal Interpleader Act in connection with the overall revision of the Judicial Code in 1948, is discussed in detail in 3 Moore's Federal Practice, 2d Ed., Chapter 22, ¶¶ 22.01 et seq.; see also 2 Barron & Holtzoff, Federal Practice & Procedure, Chapter 8, §§ 551 et seq.

In view of that liberalization the Court recognizes that the decision of the Court of Appeals for this Circuit in Klaber v. Maryland Casualty Co., 8 Cir., 69 F.2d 934, which the Court at one time felt tentatively was a bar to the granting of the relief here sought, cannot be considered as such.[3] It does not necessarily follow, however, that because that case is not a decisional obstacle to plaintiffs' claim for relief that the claim should be heard.

Pan American Fire & Casualty Co. v. Revere, supra, upon which plaintiffs rely principally arose in Louisiana and seems to have been a case of first impression under Rule 22 and the present Interpleader Act. In February 1960 an employee of Pan American's insured was involved in a disastrous motor vehicle collision with a school bus; that collision resulted in three deaths and numerous injuries. Numerous claims were made and three suits were commenced against Pan American under the peculiar Louisiana rule of law which permits an injured party to file initially a direct action against the tort feasor's liability insurance carrier. With affairs in that posture the insurer commenced its interpleader action in federal court in Louisiana, citing all claimants and potential claimants, and seeking essentially the same adjudications and relief which plaintiffs seek in the instant case.

Numerous objections to the jurisdiction of the Court were made, including the objection that the action could not be maintained because the claims of the injured persons were unliquidated tort claims. That objection was rejected by the Court in the following language (pp. 482–483 of 188 F.Supp.):

"7. *Unliquidated Tort Claims as Justifying Interpleader.* Over and above the technical objections already disposed of, the argument is advanced that interpleader is not an appropriate method of adjudicating unliquidated tort claims. Such a bald proposition might be rejected summarily were it not for the startling fact that there appears to be no precedent in the federal courts for granting interpleader in the present situation. The matter must be examined closely.

3. The *Klaber* case was decided prior to the promulgation of Rule 22 and under the Federal Interpleader Act of 1926 which was a more restrictive statute than the original Act of 1917 or the present Act, 28 U.S.C.A., § 1335. It may be noted furer that the case of American Indemnity Co. v. Hale, W.D.Mo., 71 F.Supp. 529, wherein *Klaber* was followed was decid-

ed by Judge Ridge in 1947 and the governing Act was that of 1936 which Act, insofar as here pertinent, was substantially the same as the 1926 Act. Much of the excellent brief submitted on behalf of plaintiffs consists of a detailed discussion of *Klaber* and *Hale* and of their present standing as ruling or persuasive precedents.

"At the outset, it seems clear that interpleader will lie when there are several tort claimants who have obtained judgments which aggregate more than the amount of the policy. Indeed, in that case it can make no difference whether the claims originated in tort or contract. Moreover, it is settled that interpleader is available to an insurer whose policy is insufficient to satisfy contract claims, though they have not been reduced to judgment. Why, then, should the remedy be denied to a blameless insurer faced with excessive tort claims? Three reasons have been suggested: (1) As to quantum, at least, tort claims are more conjectural than contract claims; (2) since it is not directly liable to the claimants, the insurer's exposure as to tort claims is 'remote' until they have been reduced to judgment; and (3) tort claims 'are peculiarly appropriate for jury trial,' which would have to be denied under the equitable practice of interpleader.

"The effect of the first objection is only this: that it is more difficult in the case of tort claims to determine whether the aggregate will exceed the policy limits so as to render the claimants 'adverse' and expose the insured to 'multiple liability.' It may be that there are few cases in which this result can be reasonably anticipated, but, clearly, this is one of them.

"The second objection, though it forms the basis of the only reported decision denying interpleader to an automobile liability insurer, is no better. Indeed, under the 'may be exposed' clause of Rule 22 and the 'may claim' clause of the Interpleader Act, it would not seem to matter how remote the danger might be. But, in any event, prematurity is no defense under the peculiar Louisiana law which allows a direct action against the automobile liability insurer.

"Finally, the argument based on denial of trial by jury must fall in view of the conclusion reached here that interpleader and jury trial of certain issues can properly be combined.

"Since nothing in Rule 22 or the Interpleader Act opposes the use of the remedy in an automobile case, and all the prerequisites of interpleader are satisfied, it would be a violation of the principle of 'liberal construction' of 'remedial' legislation to deny the present plaintiff the protection it asks for."

The decision in the Revere case was followed in Commercial Union Insurance Co. of N. Y. v. Adams, supra. It is to be observed, however, that the Court in *Adams* did not refer to the Louisiana rule of law upon which, in the last analysis, the Revere decision was based. *Revere* was not followed in National Casualty Co. v. Insurance Co. of North America, N.D.Ohio, 230 F.Supp. 617, and the Court there noted specifically that the Louisiana direct action statute was at least a significant factor in the Revere decision (230 F.Supp. at 620).

As stated in 2 Barron & Holtzoff, op. cit., p. 229, n. 9.2, the opinion in Pan American Fire & Casualty Co. v. Revere is a very careful one, but this Court is not bound by that decision and is not inclined to follow it here since, as indicated, Arkansas has no direct action statute comparable to that of Louisiana.

To hold that either the Interpleader Act or Rule 22 permits a liability insurance carrier to secure the relief here sought would give to such a carrier the right to choose the forum in which the existence and extent of its insured's liability would be determined, and might, as in the instant case, draw into the federal courts controversies between the insured and the injured persons not otherwise within either the original or removal jurisdiction of that court.

It may be conceded that both the Act and Rule 22 are to be construed liberally. It may be conceded also that in instances

the statute and the Rule give a choice of forum to an interpleader and may permit the litigation in federal courts of cases which would not be heard there ordinarily. The Court does not believe, however, that federal interpleader jurisdiction extends so far as to cover a situation where, as here, the claims with which a liability insurer is faced are not only potential but are also doubly contingent.[4] As of this time the liability of plaintiffs to the cotton farmers is secondary, and is contingent, first, upon the liability of Sheffield being established, and, second, upon it developing that he is not financially able to satisfy judgments against him or to reduce them to an aggregate sum within plaintiffs' policy limits. From what has been said, it follows that the complaint must be dismissed.

4. The Court has not overlooked the fact that in 2 Barron & Holtzoff, op. cit., p. 229, it is said that in view of the holding of the Revere case, interpleader in a case of this kind "will probably lie." The authors concede, however, that there is a dearth of authority on the subject. The Court will say in that connection that it does not consider cases involving corporate sureties on bonds, like Standard

Surety & Casualty Co. of New York v. Baker, 8 Cir., 105 F.2d 578, to be in point here; such sureties, along with their principals, have a direct and primary liability to the obligees on the bonds, although that liability may be limited as to amount. That point was noted in American Indemnity Co. v. Hale, supra, 71 F.Supp. at 533–534.